(Nos. 41822, 41823, 41830, 41842 cons.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* JOSEPH YOUNG *et al.*, Appellants.

*Opinion filed September 22, 1970.*

MARK H. VIRSHBO, of Chicago, appointed by the court, for appellants.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago, (JAMES B. ZAGEL, Assistant Attorney General, and ELMER C. KISSANE and JOSEPH ROMANO, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

On January 31, 1968, the grand jury of Cook County returned indictments which charged the defendants, Joseph Young and Thomas Coleman, with two separate armed robberies. One indictment charged the armed robbery of James Mitcham on January 20, 1968. With respect to that indictment the defendants waived a jury trial and were found guilty after a bench trial. Joseph Young was sentenced to imprisonment for a term of not less than 5 nor more than 12 years, and Thomas Coleman was sentenced to imprisonment for a term of not less than 3 nor more than 10 years. Thereafter, both defendants entered pleas of guilty to the second indictment which charged them with the armed robbery of Fred Morris, Jr. on January 20, 1968. On their pleas of guilty to this indictment each defendant was given the same sentence as was imposed on the Mitcham indictment, the sentences to run concurrently.

With respect to both indictments, the defendants contend that their constitutional rights to a speedy trial and to adequate representation by appointed counsel were violated because they were not brought to trial until 243 days after their arrest. They also contend that because they were not tried within 120 days of their arrest they should have been released under section 103—5 of the Code of Criminal Procedure. Ill. Rev. Stat. 1969, ch. 38, par. 103—5.

The defendants were arrested on January 20, 1968, and they were indicted on January 31. They were arraigned on February 7, 1968, at which time they consented to the motion of the public defender, who had been appointed to represent them, for a 30-day continuance. Six subsequent continuances were granted, three on motion of the public defender, and three by agreement between the public defender and the prosecution. The defendants were in court when these continuances were requested but made no objection. The last continuance requested by the public defender was from June 10, 1968, until July 19, 1968. On July 19, 1968, the defendants' present counsel entered his appearance for

the defendants, and the appearance of the public defender was withdrawn. Thereafter the cases were twice continued on motion of the prosecution. The Mitcham indictment was tried on September 19, 1968, and the defendants pleaded guilty to the Morris indictment on that day.

The defendants' arguments focus upon the fact that the public defender was provided for them by the State. They contend that since the continuances were "had for the convenience of the State—either at the request of the State's Attorney, or at the request of the State-appointed Public Defender or by agreement between them"—the State, by delaying their trial without their consent, deprived them of their constitutional right to a speedy trial and their statutory right to be tried within 120 days of arrest. Moreover, they argue that their counsel was incompetent since "their State-appointed Public Defender continued their case 6 times for no reason except his unpreparedness for trial which was apparently the result of his overburdened caseload. The Public Defender's dilatory handling of defendants' case was not poor judgment. It was poor representation. Implicit in the State's obligation to appoint counsel to handle the defense of indigents charged with crime is the requirement that counsel expeditiously handle the suit in his client's best interest."

We consider first the argument based upon the statute. Section 103—5 of the Code of Criminal Procedure provides: "Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant, * * *." (Ill. Rev. Stat. 1969, ch. 38, par. 103—5.) This statute, like its predecessors, is designed to implement the constitutional right to a speedy trial. And as we have pointed out: "As a practical matter the statute operates to prevent the constitutional issue from arising except in cases involving prolonged delay,

or novel issues \* \* \*." *People* v. *Stuckey* (1966), 34 Ill.2d 521, 523.

Under the statute it has consistently been held that a continuance granted at the request of the defendant is a delay "occasioned by the defendant." (*People* v. *Kuczynski* (1965), 33 Ill.2d 412; *People* v. *Williams* (1963), 27 Ill.2d 327.) Although the defendants argue that the public defender "continued their case 6 times for no reason except his unpreparedness for trial which was apparently the result of his overburdened caseload," nothing in the record supports this charge. The defendants were in court when the requests for continuances were made, but did not object. We cannot say that the public defender was incompetent for delaying the defendants' trial solely on the basis of an unsupported assertion in the defendants' brief, or that the delay due to the continuances requested by the defense counsel should be attributed to the State so as to constitute a violation of the defendants' rights under the 120-day statute.

Nor do we consider that the lapse of 243 days between arrest and trial, standing alone, establishes a denial of the defendants' constitutional right to a speedy trial. While our implementing statute speaks in terms of a specific number of days, the constitutional right to a speedy trial depends rather upon a realistic appraisal of the circumstances which confronted court and counsel. In *United States* v. *Ewell* (1966), 383 U.S. 116, 120, 15 L. Ed. 2d 627, 631, 86 S. Ct. 773, the Supreme Court quoted these observations concerning the right to speedy trial: " 'The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice.' [Citation.] 'Whether delay in completing a prosecution \* \* \* amounts to an unconstitutional deprivation of rights depends upon the circumstances \* \* \*. The delay must not

be purposeful or oppressive,' [citation]. '[T]he essential ingredient is orderly expedition and not mere speed.' [Citation]." The records before us do not indicate a denial of the right to a speedy trial.

With respect to the judgment on the Mitcham indictment, the defendants contend that their motion to suppress the identification testimony of Mitcham should have been sustained. Mitcham testified that he was making a telephone call from an outside telephone booth on the corner of 45th Street and Greenwood Avenue in the city of Chicago. He testified that three men aproached, the door of the phone booth was opened, one of the men pointed a gun at his head, and his money and keys were taken. One of the men then ordered him to cross 45th Street and walk west on that street. That man walked behind him across 45th Street and then north on Greenwood. The other two, who had crossed 45th Street ahead of Mitcham, walked west on 45th Street. Mitcham further testified that he had walked about 12 steps when a police car pulled up to a stop sign at the corner of 45th and Greenwood. He told the officers what had happened.

Officer Janus testified that after Mitcham had told him that he had just been robbed, he got out of the car, saw two men, the defendants, walking west on 45th Street, and ordered them to stop and put their hands up. He stated that he saw one of the men, the defendant Young, throw an object over a fence as he raised his hands. He further testified that after he had stopped the two men, Mitcham came up behind him and said that the two men were two of the three who had robbed him. The officer then arrested the two men and searched behind the fence where he found a pistol.

The defendants in their testimony denied that Young had thrown a gun behind the fence and denied that Mitcham had come up behind the policeman and accused them of the

robbery. They testified that Mitcham first approached them while they were sitting in the squad car after they had been arrested.

The motion to suppress the identification testimony which the public defender filed in the trial court relied upon the decisions of the Supreme Court in *United States* v. *Wade* (1967), 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926; *Gilbert* v. *California* (1967), 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951, and *Stovall* v. *Denno* (1967), 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967. In their brief in this court the defendants do not mention those decisions. They contend, however, that the "police technique imposed on the State's principal witness the psychological presumption that the men were in fact those who had participated in the crime." Mitcham testified that he had never lost sight of the defendants during the interval between the robbery and their apprehension. The record does not suggest that the police brought Mitcham to view the defendants after they were in custody; rather, it appears that he walked across the street on his own initiative after the two men had been placed under arrest.

Even if the proof were otherwise and the officers had taken Mitcham to view the defendants in custody in the police car, we are of the opinion that the principles announced in *Stovall, Wade* and *Gilbert* would not have been violated. Indeed, in our opinion, police officers who failed, in circumstances like these, to determine at once whether or not the victim of the crime could identify the men in custody as the men who had committed the crime, would be subject to criticism. Many decisions of other courts support our conclusion that no rights of the defendants were violated by the identification procedure used in this case. See, *e.g.*, *Russell* v. *United States* (D.C. cir. 1969), 408 F.2d 1280, *cert.* denied, 395 U.S. 928; *Commonwealth* v. *Bumpus* (1968), 354 Mass. 494, 238 N.E.2d 343; *United States* v.

*Davis* (2d cir. 1968), 399 F.2d 948, *cert.* denied, 393 U.S. 987; *State* v. *Hamblin* (Mo. 1970), 448 S.W.2d 603.

The judgments of the circuit court of Cook County are affirmed.

*Judgments affirmed.*