(No. 42441.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. ANDREW ELAM, Appellant.

*Opinion filed January 14, 1972.*

ANSANI & LOUTOS, appointed by the court, for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago, (JAMES B. ZAGEL, Assistant Attorney General, and ROBERT A. NOVELLE and ROBERT L. BEST, Assistant State's Attorneys, of counsel,) for the People.

MR. JUSTICE DAVIS delivered the opinion of the court:

The defendant, Andrew Elam, was convicted in the circuit court of Cook County of the offense of armed robbery after trial by the court, and was sentenced to not less than 5 nor more than 15 years in the State Penitentiary.

About 11:00 P.M. on December 27, 1968, James McGarrity, a bus driver employed by the Chicago Transit Authority, was traveling east on 59th Street in Chicago when he stopped at Racine Avenue, where a man and woman boarded his bus. The woman paid her fare and took a seat immediately behind the driver. The man, however, remained standing next to the driver, and

continued to fumble through his pockets. Finally, he dropped his hand behind McGarrity's back and said: "This is a small gun but it will blow your back out." He demanded money, and McGarrity gave him some folded currency from his shirt pocket. The man then stepped down on the step by the door to the bus, faced McGarrity and, with his hands still in his pockets, ordered McGarrity to open the bus door. McGarrity complied and let the man off the bus at a point about fifty feet from the regular stop at Halsted Street. The man then walked westerly along 59th Street—the direction from which the bus had come.

Moments later, two police officers, in an unmarked squad car, saw the flashing lights of the bus, and stopped alongside it. They were informed by McGarrity that he had just been robbed, were given a description of the robber, and McGarrity left the bus and rode with the police officers in the direction the robber had taken. The woman, who had been seated behind McGarrity, advised the police that she could identify the robber, and went in a second police car to search for him.

McGarrity described the man as being about 5 feet 9 inches in height, with medium brown skin, a short "process" hair cut, a scar on his chin, and a mustache. He stated that the man wore a small-checkered topcoat and that he had been able to observe the man for about 5 minutes while he was in the bus, which was well illuminated.

Within 10 minutes after the robbery and about one and one-half blocks from where it occurred, McGarrity observed the defendant standing with several other individuals at the intersection of 60th and Halsted streets, and asked the two officers to back up their vehicle to afford him a better view. At that point the bus driver identified the defendant and stated, "Why, sure, that's the fellow." The officers then arrested, searched the defendant and removed from his pockets a knife, a half-pint bottle of whiskey, and 13 folded one-dollar bills. The police car in

which the woman was riding arrived shortly thereafter, and she also identified the defendant as the robber while he was seated in the other vehicle with McGarrity and the two officers.

At the trial, McGarrity testified that the dollar bills taken from the defendant were folded in the same manner as the bills which were taken from him on the bus. Both McGarrity and the arresting officer testified that when the defendant was arrested he attempted to kick McGarrity and asserted that the bus driver had robbed him.

The woman bus passenger testified that she had seen the defendant leaving a tavern before boarding the bus, that he had annoyed her while she was awaiting the bus so that she was forced to cross the street to wait until it arrived, and that she did not take her eyes off the defendant the entire time he was on the bus. She further testified that the defendant kept his hands in his pockets, and that he thrust something forward to a point from within one pocket.

The defendant testified in his own defense and denied that he had been on McGarrity's bus and that he had a knife when arrested. He admitted that a black and white checked coat which was admitted in evidence was the one he was wearing when arrested. The coat had been identified by McGarrity as the one worn by the robber.

Prior to the trial, the defendant moved to suppress the identification testimony of the bus driver and his woman passenger on the grounds that the defendant was without counsel when confronted by the two witnesses within 10 minutes after the robbery. The motion was denied.

The defendant, relying on *United States v. Wade, 388 U.S. 218, 18 L.Ed.2d 1149, 87 S.Ct. 1926,* contends that the trial court erred in failing to suppress the identification testimony because the defendant was without counsel when the two witnesses confronted him minutes after the robbery. He also asks this court to reconsider its decision in *People v. Palmer, 41 Ill.2d 571,* wherein we held that

the right to counsel at pretrial confrontations applied only to post-indictment confrontations.

The confrontation of which the defendant complains was not police-arranged, but rather, was a prompt on-the-scene identification of the accused by two eyewitnesses who aided the police in a search for the robber immediately after the robbery. This type of confrontation is common in the apprehension of criminal offenders.

In *Bates v. United States (D. C. Cir. 1968), 405 F.2d 1104,* the court at page 1106 stated: "There is no prohibition against a viewing of a suspect alone in what is called a 'one-man showup' when this occurs near the time of the alleged criminal act; such a course does not tend to bring about misidentification but rather tends under some circumstances to insure accuracy. The rationale underlying this is in some respects not unlike that which the law relies on to make an exception to the hearsay rule allowing spontaneous utterances a standing which they would not be given if uttered at a later point in time." The court further observed that such procedure fosters the desirable objectives of fresh, accurate identifications which may lead to the immediate release of an innocent suspect and at the same time enable the police to resume the search for the fleeing offender while the trail is fresh.

Such confrontations have been approved specifically by this court, and do not violate the principle announced by the United States Supreme Court in *United States v. Wade, 388 U.S. 218, 18 L.Ed.2d 1149, 87 S.Ct. 1926; Gilbert v. California, 388 U.S. 263, 18 L.Ed.2d 1178, 87 S.Ct. 1951;* and *Stovall v. Denno, 388 U.S. 293, 18 L.Ed.2d 1199, 87 S.Ct. 1967,* all of which were cited by the defendant.

In *People v. Young, 46 Ill.2d 82,* we suggested that police officers may be derelict in their duty should they fail to cause such a confrontation. At page 87, we stated: "Indeed, in our opinion, police officers who failed, in

circumstances like these, to determine at once whether or not the victim of the crime could identify the men in custody as the men who had committed the crime, would be subject to criticism. Many decisions of other courts support our conclusion that no rights of the defendants were violated by the identification procedure used in this case. [Citations.] " It should be noted that the defendant in the case at bar had neither been arrested nor was he in custody when he was identified by the victim of the robbery. Consequently, we find no reason for the reconsideration of our decision in *Palmer*.

The defendant also urges that the identification testimony of the State's two principal witnesses was insufficient to convict, and that he had not been proved guilty beyond a reasonable doubt. These contentions will be considered together. The two identification witnesses had ample opportunity, under well-lighted conditions, to observe the defendant's face, as well as his clothing. The woman passenger had observed the defendant at close proximity while waiting for the bus, as well as while on the bus, which was well illuminated. The bus driver looked at the defendant's face two or three times, and was thus able to describe his facial features in detail.

Within ten minutes following the robbery, each witness made a positive identification of the defendant who was found within a block and a half of the place of the robbery. The two identifications were positive and unequivocal and they were not impaired in any respect by cross-examination.

We have found similar identification testimony sufficient to convict where only one witness testified, provided the witness was credible and the view of the accused was under such circumstances as would permit a positive identification. *(People v. Martin, 47 Ill.2d 331, 334; People v. Brinkley, 33 Ill.2d 403, 405, 406.)* Here, there were two credible and positive witnesses. We find,

therefore, that the identification testimony offered at the trial was sufficient to establish the guilt of the defendant beyond a reasonable doubt.

Finally, the defendant argues that the State failed to prove all the essential elements of the crime of armed robbery because no gun was found upon him, nor introduced in evidence at the trial, and because the defendant denied that the three-inch knife was found upon his person at the time of his arrest. The defendant cites *People v. Binion, 80 Ill.App.2d 130,* to support his contention. In *Binion,* however, there was no evidence that a weapon of any kind was found in the possession of the defendant. In this case, McGarrity, the victim of the robbery, was told by his assailant, and believed, that a small gun was pointed at his back. The defendant was apprehended within minutes after the robbery, and a knife was found on his person. Under these circumstances, we reject the argument that the defendant was not armed with a dangerous weapon, even though it could not be seen.

The Criminal Code (Ill.Rev.Stat. 1967, ch. 38, pars. 18—1(a) and 18—2(a)) defines armed robbery as follows:

"Sec. 18—1(a) A person commits robbery when he takes property from the person or presence of another by the use of force or by threatening the imminent use of force.

\* \* \*

Sec. 18—2(a) A person commits armed robbery when he violates Section 18—1 while armed with a dangerous weapon."

Under this language we hold that the knife in question was a dangerous weapon and that the actual existence of a dangerous weapon in the possession of the accused at the time of the robbery was sufficient to fulfill the requirements of the Code even though the weapon itself was neither seen nor accurately described by the victim.

For these reasons, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*