THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* BESSIE BURCHETTE, Defendant-Appellant.

(No. 55893;

First District—March 14, 1972.

Gerald W. Getty, Public Defender, of Chicago, (John T. Moran, Jr. and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Terry Gordon, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Defendant was indicted for murder. After a jury trial defendant was convicted of voluntary manslaughter. On appeal defendant contends:

1. The court erred in refusing to allow defendant to impeach a prosecution witness;
2. The court erred in admitting a statement made by the deceased to a bystander; and
3. Defendant was not proven guilty beyond a reasonable doubt.

It is undisputed that on February 21, 1970, defendant, Tommie Gilchrist, Jimmie Lee Hazley and Elsie Jamerson went from a tavern to a nearby apartment to play cards. The card game had commenced when an argument ensued between Tommie Gilchrist and Elsie Jamerson (hereinafter the deceased).

Tommie Gilchrist testified that as he started to walk away from the altercation between the deceased and himself the deceased threw a bottle which struck him on the shoulder. He turned and called to a man in another room. While his back was turned he heard a gunshot. He turned around and saw defendant and the deceased "tussling at arm's length." He saw a gun in defendant's hand. He heard more shots, started for the door of the apartment and urged defendant to depart with him.

Jimmie Lee Hazley testified that after the deceased threw the bottle which struck Gilchrist she, Mrs. Hazley, urged the deceased not to "toss up" the apartment. The deceased replied, "okay, come on, let's go." Mrs. Hazley then went to the bathroom. While in the bathroom she heard gunshots fired in rapid succession. She came from the bathroom and saw defendant turn around and say to Gilchrist, "Come on, let's go." The deceased said to her, "Jimmie, that whore shot me and I'm hurt."

Defendant testified as follows: that following the argument between the deceased and Gilchrist the deceased began to throw bottles. The deceased threw one bottle which missed Gilchrist and then threw another bottle which struck him on the shoulder. Defendant told the deceased to stop whereupon the deceased swore at her, picked up another bottle and came at her. The deceased and defendant were three to four feet apart. Defendant removed a pistol from her purse to frighten the deceased and repeated the command to stop. Defendant fired two shots at a downward angle of approximately 45 degrees in the direction of the deceased. Defendant and the deceased scuffled. The deceased struck defendant in the arm and in the side with the bottle. Defendant's glasses fell off and she asked Jimmie Lee Hazley to retrieve them for her. Mrs. Hazley handed defendant her glasses and defendant put them back on. During that interval the deceased almost succeeded in taking the gun from defendant. Defendant pulled the gun back and it fired three times. The deceased fell to the floor. Defendant and Gilchrist then departed from the apartment. Defendant further testified that she is 5 feet 7 inches tall and at the time of the occurrence weighed in excess of 175 pounds.

It was stipulated that the deceased was 5 feet 7 inches tall and weighed 134 pounds. There were four bullet wounds in the body of the deceased; two entered the heart, one caused only superficial damage to the right side of the deceased over the second rib, and the other penetrated the abdominal wall causing a laceration of the colon.

Romas Arbataitis testified that he was a policeman for the City of Chicago. He had occasion to be in the apartment where the shooting took place after the occurrence. He recovered a .22 caliber revolver from the stairs leading to the apartment that contained five expended cartridges and one live cartridge. The condition of the apartment seemed normal to him; things appeared to be in their proper place.

James Fraghia testified that he was a policeman and had occasion to be in the apartment after the deceased was shot. He did not notice anything strewn about. He did not notice any liquor bottles.

OPINION

Defendant initially contends that the court erred in refusing to allow defendant to impeach a prosecution witness. Upon direct examination

of Tommie Gilchrist he testified that while he and defendant were walking from the tavern to the apartment where they were going to play cards defendant said, "I ought to draw," and thereupon displayed a gun which was identified at the trial as the one used by defendant to shoot the deceased. On cross-examination, after having laid a proper foundation, defendant sought to impeach the witness by attempting to elicit that the witness failed to relate the foregoing to the police the day after the crime when he provided them with a statement. The prosecution objected to defendant's question and the court sustained the objection. In chambers the court stated that defendant was attemping to impeach the witness by omission and ruled that such was not proper impeachment.

■■ The rule is that the omission of a witness to state a particular fact under circumstances rendering it likely that he would state that fact, if true, may be shown to discredit his testimony as to such fact. (*People v. Henry*, 47 Ill.2d 312.) Therefore, if the court had found that the circumstances were such that the witness would likely have related defendant's alleged conduct to the police when the witness provided them with a statement the court should have allowed defendant to impeach the witness's testimony. However, we need not decide whether the court erred in refusing to allow defendant to impeach the witness's testimony, since even if it was error it did not result in manifest prejudice to defendant and is not, therefore, ground for reversal. (*People v. Nugara*, 39 Ill.2d 482.) The testimony was to the effect that defendant had a gun in her possession before the crime and that defendant may have treated the weapon as a toy. We do not perceive any prejudice since defendant elected to testify in her own behalf and stated that she had carried the gun in her purse for a period greater than a year and admitted wilfully firing the weapon in the direction of the deceased just prior to the crime.

■■ Defendant next contends that the court erred in admitting a statement deceased made to a bystander after she was shot. Jimmie Lee Hazley testified that upon hearing gunshots she came from the bathroom to the dining room where she observed the deceased behind a door. The deceased then said, "Jimmie, that whore shot me and I'm hurt." Defendant urges that the statement should have been excluded as hearsay. We disagree. In the instant case there was an occurrence sufficiently startling to produce a spontaneous and unreflecting statement; there was little time in which to fabricate; and the statement related to the circumstances of the occurrence. Therefore, the statement was properly admitted as a spontaneous declaration. (See *People v. Poland*, 22 Ill.2d 175.) Even if the statement was not a spontaneous declaration we fail to perceive how admission of it into evidence has prejudiced defendant.

738

Defendant did not deny shooting the deceased, but defended on the ground of self-defense.

Defendant's final contention is that she was not proven guilty beyond a reasonable doubt. Defendant cites *People v. Honey*, 69 Ill.App.2d 429, as directly in point with the case at bar. We disagree. In *Honey*, the deceased outweighed the defendant by more than 30 pounds. Three days prior to the occurrence in that case, the deceased had threatened defendant with a gun and told him he was going to kill him. On the date of the occurrence the deceased swung a bottle at defendant, dropped the bottle to the ground and said, "I told you I was going to kill you." The deceased then reached toward his pocket. Defendant tried to run but was cornered. Defendant picked up a bed rail from the ground and jabbed the deceased in the jaw whereupon the deceased fell to the ground. Defendant tried to revive the deceased with water from a nearby pail before leaving the scene of the occurrence. The instant case is distinguishable in that defendant weighed in excess of 40 pounds more than the deceased; defendant was not previously threatened by the deceased; and after the shooting defendant did not attempt to render aid to the deceased, but instead departed the apartment.

It is well established that a reviewing court will not disturb a jury's verdict of guilty unless the evidence is so palpably contrary to the verdict or so unreasonable, improbable or unsatisfactory as to cause a reasonable doubt as to the guilt of the accused. We have carefully examined the evidence adduced at trial and hold that it was ample to support the jury's verdict.

The judgment of the trial court is therefore affirmed.

Judgment affirmed.

SCHWARTZ and LEIGHTON, JJ., concur.