THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOSEPH FABIAN, Defendant-Appellant.

First District (3rd Division)   No. 61655

Opinion filed October 7, 1976.

Michael Jay Green, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Roger Horwitz, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE MEJDA delivered the opinion of the court:
Following a bench trial, defendant, Joseph Fabian, was found guilty of murder and was sentenced to the penitentiary for a period of not less than 25 nor more than 75 years. He appeals and contends: (1) he was not proved guilty beyond a reasonable doubt, and (2) the sentence was excessive and should therefore be reduced by this court. We affirm. A summary of the pertinent facts follows.

At approximately 9:30 p.m., on June 19, 1973, David Gonzales was killed by a .38 caliber bullet while standing talking with a group of men in Harrison Park. Pursuant to an investigation of the crime, a warrant issued on June 21, 1973, for the arrest of defendant. He was arrested and charged with murder on January 26, 1974, and was indicted on March 29, 1974. The testimony of the five occurrence witnesses called by the State is summarized below.

Sylvia Martinez was near the entrance to the park in an area illuminated by a street light. She was a resident of the area and knew defendant by sight. Her attention was drawn to a slow-moving car approximately 15 feet away, containing a driver and one passenger. She identified defendant as the passenger. She observed the car for about one minute, and in that time saw defendant fire a revolver in the direction of the group of men in Harrison Park. When the shots were fired the witness ducked down, then saw the car drive away. While she was down a second car appeared and she saw a "long barrel" in it. More shots were fired, then the second car pulled away. The witness then went to the hospital for treatment of a shotgun pellet wound in her finger. While there she was asked by police if she knew any of the occupants of the two cars and she replied that she did not. It was almost 10 months later, while relating the incident to an assistant State's Attorney a few weeks before trial, that she first identified defendant as the person who fired the revolver.

Henry Villagomez was personally acquainted with defendant. He was standing near a light post just inside the entrance to the park, talking to a group of people, including the victim, David Gonzales. There were other light posts in the general area. Villagomez and the victim both worked for the Latin American Youth Center. Their function was to mediate differences between rival clubs or gangs. The other men in the group were members of the Morgan Deuces. Defendant was a member of a

rival club, the Latin Kings. While Villagomez stood with his back to the street he heard shots; he fell to the ground, rolled over on his back, and looked to see who was firing at him. He recognized the sounds as shots because he had been in military service and was a Vietnam veteran. He saw that the gunfire was coming from a pistol held by a person whose body was partially protruding from the passenger's window in the front seat of a car. He identified defendant as that person. Villagomez was not wounded, but went to the hospital where he spoke briefly with the police. He did not identify defendant at that time. Approximately one month later, police, with a warrant for defendant's arrest, came to Villagomez' house looking for defendant. They did not question him about the incident and he did not identify defendant to them as the assailant. He first identified defendant as the murderer about 8 months later at a preliminary hearing.

On the night of the incident, Gil Saenz was in the group in the park when he heard shots and dropped to the ground. He heard a car drive away but did not see the car nor its occupants. He then saw another car pull up. Trini Penia was a passenger in the car and had a shotgun. Saenz again lay on the ground and heard two shots from a shotgun. He got up and saw the car drive away.

John Cruz was also in the park that evening in the group of men fired upon. He heard shots and turned toward the street where he saw flashes coming from a car. He felt something hit his face and fell to the ground. He heard what sounded like shotgun blasts. He did not notice a second car and did not identify defendant as the assailant in the first car.

Luis Leal was with defendant and Trini Penia before driving to the park on the night of the incident, and he drove the car. Defendant rode in another car about 20 feet ahead of them. Both cars slowed down and Leal saw a group of people in the park. At about this time he heard loud shots near his car and the two cars drove off together. He denied that any shots came from his car and denied that Penia had a shotgun. He did not see defendant with a gun.

Defendant first contends that the identification testimony presented by the State was insufficient to establish his guilt beyond a reasonable doubt. He attacks the credibility of the State's identification witnesses, Sylvia Martinez and Henry Villagomez.

There can be no question that a judgment of conviction can only be sustained by credible evidence which proves the guilt of the defendant beyond a reasonable doubt. (*People v. Coulson* (1958), 13 Ill. 2d 290, 296, 149 N.E.2d 96; *People v. Keagle* (1955), 7 Ill. 2d 408, 413, 131 N.E.2d 74, *cert. denied,* 351 U.S. 942, 100 L. Ed. 1468, 76 S. Ct. 842 (1956).) However, in a bench trial the determination of the trial judge as to the credibility of witnesses and the weight to be given their testimony will not

be disturbed unless palpably erroneous. (*People v. Arndt* (1972), 50 Ill. 2d 390, 396, 280 N.E.2d 230. See also *People v. Guido* (1962), 25 Ill. 2d 204, 208, 184 N.E.2d 858; *People v. Nichols* (1975), 32 Ill. App. 3d 265, 268, 336 N.E.2d 194.) For such purposes, a reviewing court should not focus on isolated instances of testimony but must instead examine the evidence as a whole.

The fact that only two of the five occurrence witnesses were able to identify defendant is of little consequence. The testimony of even a single witness, if positive and credible, is sufficient to sustain a conviction. (*People v. Stringer* (1972), 52 Ill. 2d 564, 569, 289 N.E.2d 631; *People v. Clark* (1972), 52 Ill. 2d 374, 386, 288 N.E.2d 363.) However, defendant attacks the credibility of those two witnesses who did identify him as the murderer, and argues: (1) that neither witness had sufficient opportunity to observe the incident, and (2) that both witnesses delayed some 9 or 10 months after the incident before coming forward with their testimony. Defendant maintains that this casts sufficient doubt on the credibility of the testimony of Sylvia Martinez and Henry Villagomez to the extent that it did not constitute proof of guilt beyond a reasonable doubt.

■■ ■ Defendant's first argument is that the two witnesses had insufficient opportunity to positively observe the assailant's identity. Both witnesses were residents of the neighborhood and familar with defendant, whom they knew by sight. Sylvia Martinez was 15 feet away, and Villagomez was 30 to 40 feet from the car containing the assailant. While the incident occurred at night, artificial lighting illuminated the general area; Sylvia Martinez was near a street light and observed the car and its occupants for approximately one minute, while Villagomez was near a light post at the park entrance and observed the assailant for a somewhat shorter period. His lying face down, then turning over on his back to observe his attacker may have been unusual, but not incredible, as defendant contends. It is reasonable that a man being fired upon would attempt to identify his attacker. It is particularly reasonable that a man with the military and Vietnam background of Villagomez would be able to act in the manner he did in order to make such an identification. In addition to the physical locations and actions of these two witnesses, their testimony was consistent concerning what portions of defendant were visible in the car and the manner in which he held and fired the gun. Furthermore, their testimony was consistent with that of Leal who placed defendant at the scene, and with that of Saenz and Cruz who related similar accounts of the attack. The record indicates, contrary to defendant's argument, that the two identification witnesses had sufficient opportunity to observe and identify defendant during the incident.

Defendants' second argument is that the delay of Sylvia Martinez and Henry Villagomez in identifying him impaired the credibility of their

testimony. He claims that both witnesses, without explanation, neglected previous opportunities to identify him to the police. When a witness given an earlier opportunity fails to assert a fact, the credibility of his later testimony as to the existence of such fact is adversely affected. "The rule is that the omission of a witness to state a particular fact under circumstances rendering it likely that he would state that fact, if true, may be shown to discredit his testimony as to such fact." (*People v. Burchette* (1972), 4 Ill. App. 3d 734, 737, 281 N.E.2d 773.) There was ample evidence, if believed by the trial court, to find that the witnesses had sufficient opportunity to observe the incident and that the identification testimony was credible.

However, Sylvia Martinez did make conflicting statements to the authorities. On the night of the incident she told police she could not identify the assailant, and just before trial she told an assistant State's Attorney that she could identify defendant as the assailant. The mere existence of such a conflict, however, does not of itself create a reasonable doubt as to defendant's guilt. Matters of conflict in testimony as well as questions of credibility of witnesses are for the trier of fact and will not be disturbed unless the evidence is so improbable, unbelievable or unsatisfactory as to raise serious questions of defendant's guilt. (*People v. Dillon* (1975), 28 Ill. App. 3d 11, 21, 327 N.E.2d 225.) We do not find the evidence so improbable, unbelievable or unsatisfactory. Moreover, it is significant that the testimony was consistent with and supported by the testimony of Villagomez, the other identification witness.

Concerning Villagomez, while he did speak with the police on two occasions before finally identifying defendant at a preliminary hearing, the police on neither of the previous occasions made inquiry as to his ability to identify any participant in the incident. When the police contacted him on the second occasion, approximately a month after the incident, there had already been a warrant issued for defendant's arrest. The police then merely inquired whether Villagomez knew defendant's whereabouts.

A review of the record discloses that the finding of defendant's guilt is amply supported by the evidence. We conclude that the evidence is not so improbable, unbelievable or unsatisfactory as to raise serious questions of defendant's guilt.

Defendant's second contention on appeal is that the sentence imposed was excessive. Murder is a separate class felony for which a penitentiary sentence for an indeterminate term with a minimum of not less than 14 years is provided. (Ill. Rev. Stat. 1973, ch. 38, par. 9—1(b).) In addition, the Unified Code of Corrections in section 5—8—1(b)(1) provides that for murder, the maximum term shall be any term in excess of 14 years, and in section 5—8—1(c)(1) that the minimum term shall be 14 years unless the court, having regard to the nature and circumstances of the

offense and the history and character of the defendant, sets a higher minimum term. (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(b)(1) and (c)(1).) The sentence imposed is clearly within the statutory limits. Nonetheless, defendant asks this court, in view of his youth, the absence of a prior criminal conviction, and the possibility of rehabilitation, to exercise its authority under Supreme Court Rule 615(b)(4) to reduce the sentence. Ill. Rev. Stat. 1973, ch. 110A, par. 615(b)(4).

■■ Although reviewing courts have the power to reduce sentence, such authority should be applied with considerable caution and circumspection because the trial judge ordinarily has a superior opportunity in the course of the trial and the hearing in aggravation and mitigation to make a sound determination as to the punishment to be imposed. (*People v. Stephens* (1974), 18 Ill. App. 3d 971, 310 N.E.2d 824; *People v. Fox* (1971), 48 Ill. 2d 239, 269 N.E.2d 720.) The power is limited for use in those instances where the punishment imposed is at variance with the fundamental spirit of our laws, or is disproportionate to the offense. (*People v. Huggy* (1974), 19 Ill. App. 3d 247, 311 N.E.2d 355.) The imposition of sentence is peculiarly within the discretion of the trial court, and unless abuse is shown, we will not find error in its determination. *People v. Hanserd* (1970), 125 Ill. App. 2d 465, 261 N.E.2d 317.

■■ In the instant case, the trial court, after considering the matters in aggravation and mitigation which included a presentence report, expressly stated prior to imposing sentence.

> "Having duly regarded, as the Court must, the nature of the circumstances of the offense, and considering the history and character of the defendant, indeed, in balancing those various factors, the Court is certain that something more than the minimum sentence is warranted in this case."

Although the sentence exceeded the minimum required by statute, and being cognizant of the youthfulness of the defendant and his lack of a prior felony record, these matters were duly considered by the trial court. In view of the seriousness and nature of defendant's conduct in the commission of the offense, we do not believe the sentence constituted a departure from the fundamental law, its spirit or purpose, nor is it manifestly excessive. We conclude that the trial court did not abuse its discretion and that this is not a proper case to exercise our power to reduce the sentence.

Accordingly, the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

DEMPSEY and McNAMARA, JJ., concur.