THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
RONALD BROWN, Defendant-Appellant.

First District (2nd Division)   No. 60249

Opinion filed April 19, 1977.

Frederick F. Cohn, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Larry L. Thompson, and William J. Stacy, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Ronald Brown, William McGowan, and Bruce Fann were charged by indictment with burglary (Ill. Rev. Stat. 1969, ch. 38, par. 19—1 in that they knowingly and without authority entered Bluestein's Clothing Company, Inc., store with the intent to commit theft. Fann's trial was severed from that of Brown and McGowan. The latter two were tried jointly before a jury which found Brown guilty and McGowan not guilty.

On appeal, Brown contends the evidence did not prove him guilty beyond a reasonable doubt. He also urges that errors at trial, singly or cumulatively, require reversal and remandment for a new trial. These alleged errors are: (1) the trial court failed to permit defense counsel to impeach State witnesses by establishing omissions in their prior statements of facts testified to at trial; (2) the prosecutor impliedly advised the jury that Brown had made an admission where a preliminary motion to suppress had been granted; (3) the prosecutor's closing argument was improper and prejudicial; and (4) the trial court accidentally instructed the jury that a defendant is presumed guilty but immediately corrected the mistake and properly instructed the jury. Finally Brown urges the cause should be remanded for resentencing because (1) the trial court did not give Brown the election of being sentenced under the provisions in effect in 1971 or the provisions of the new Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1001—1—1 et seq.); and (2) in determining sentence, the trial court improperly considered some of Brown's prior arrests for offenses of which he subsequently had been discharged.

Since it is urged that the evidence is insufficient to convict defendant beyond a reasonable doubt, it is necessary to summarize the evidence adduced at trial against Brown.

Officer Nick testified that on May 2, 1971, at 1:30 a.m., he and his partner Officer Franzo responded to an American District Telegraph alarm by proceeding to 3945 W. North Avenue, the location of Bluestein's Clothing Store. He ascertained that the doors and windows of the store were secure. Nick then summoned assistance while Franzo climbed a metal fire escape ladder to the first level of the roof on the Bluestein store. As additional police arrived, Nick proceeded to the roof level where Franzo was stationed. They heard noises on the other side of a seven- to eight-foot high picket fence with a locked gate. Franzo and Nick forced open this gate whereupon Nick saw three to four white males climbing a ladder to the second level of the Bluestein roof. Nick observed a hole in

the first level roof and saw about 100 men's suits stacked next to the hole. Franzo pursued the offenders. Nick stationed himself alongside the hole in the roof. Franzo returned with Fann in handcuffs. The roof was dark and Nick did not use his flashlight. The fleeing figures were facing away from Nick when he observed them. On cross-examination, he admitted that he only saw three offenders.

Officer Nick's partner, Officer Franzo, corroborated Nick's testimony as to how they came on the scene and as to their initial actions. Franzo stated that before breaking open the gate in the picket fence, he observed three to four men crouching over a pile of clothing by looking through the cracks in the fence. Upon breaking through the gate, he pursued the offenders, chased them across the roof and followed them up a ladder to the second level of the roof. Thereupon, he drew his gun. The offenders were 25 to 30 feet ahead of him. The closest to him was 5'3", wore dark pants, a short brown jacket and weighed 130 pounds. The second wore dark trousers, a light shirt and a black leather jacket. The third wore dark trousers, wash pants, a shorter black leather jacket and a blue shirt with a white stripe around the neck. None of the offenders wore hats. He chased the offenders across the roof to the roof of an adjoining Woolworth building. A door to a stairwell was unlocked. The offenders entered the building and went down the stairs. Franzo was still in pursuit. Then, they kicked through a plate glass door. The offenders went across Pulaski Avenue and into an alley. Franzo was still trailing the offenders by 30 to 40 feet. The offenders were still dressed as described except that their clothing was dirty. The chase proceeded through another alley. Franzo fired a warning shot. Fann fell and was taken into custody. Franzo returned to the Bluestein store. Shortly thereafter, Brown was brought to the store in a police squad car by two officers who had joined Franzo in the chase. Franzo made an on-the-scene identification of Brown. Franzo also identified Brown and McGowan in court as two of the offenders. The only difference in Brown's appearance was that he did not have a mustache at the time of the alleged offense while he did have a mustache at the time of the trial. Also, his hair was shorter at the time of the alleged offense. Franzo testified that the alleys were well lit and that he had no difficulty in identifying the offenders. On cross-examination, Franzo admitted that he did not know if Brown's clothing was taken from him or whether glass fragments were recovered from Brown's clothing. He never had a full frontal view of any of the offenders. However, Franzo was able to see their faces while chasing them because, at various times, the offenders looked back over their shoulders.

Officer Bart was a plainclothesman on duty at the time and place of the incident in question. Upon arriving at the scene, he positioned himself on the corner of North and Pulaski so as to be able to see east and south of

the clothing store. He heard shouting from the roof of the store. Thereafter, he saw four men, one a police officer, chasing the other three from the Woolworth building. Bart gave descriptions of the offenders' clothing which matched that given by Franzo. He identified Brown in court as one of the offenders—stating that he was the offender who wore a blue shirt with a white stripe.

Officer Fritz testified that he was Bart's partner at the time and date in question. He heard breaking glass and saw three white male subjects running through the doorway to the Woolworth building. Fritz identified Brown and McGowan as two of the individuals he saw running through the door. Seeing that the subjects were being pursued by Officer Franzo, Fritz also gave chase. He heard Franzo's shot, saw Fann fall, saw Franzo stop to arrest Fann and proceeded to run after the other two. Eventually he caught up to and arrested Brown. On cross-examination, Fritz admitted that he did not recall how the subjects got over, under, or around the horizontal bars across the glass door. It took four to five minutes from the time he saw the offenders to the time he tackled and subdued Brown. Brown wore a pullover shirt with a white stripe. He admitted that at one point, he lost sight of the individuals he was pursuing.

Sol Bluestein, the owner of the clothing store, testified that he had closed his store at 6 p.m. the previous evening and that he had not given anyone permission to be in the store. He testified that the suits in question were from his store.

The remainder of the testimony in the State's case-in-chief pertained to the other defendant and need not be repeated here. It should be noted, however, that McGowan was arrested in the vicinity about an hour after the chase ended. The defense rested without calling any witnesses on behalf of Brown.

I.

Brown's initial contention on this appeal is that he was not proved guilty beyond a reasonable doubt. Specifically, he contends that he was insufficiently identified as one of the individuals who committed the burglary because the identification evidence adduced at trial was based upon inadequate observation by the state's witnesses. In addition, he argues that codefendant McGowan's acquittal of the same offense created a reasonable doubt of his guilt.

■■ The state has the burden of proving beyond a reasonable doubt that an accused is the person who committed the crime charged. This burden may be met by a positive identification by one witness who had adequate opportunity for observation. (*People v. Clark* (1972), 52 Ill. 2d 374, 386-87, 288 N.E.2d 363.) However, an identification need not be

positive to support a conviction, its weight being a question for the trier of fact to determine in connection with the other circumstances of the case. (*People v. Oswald* (1963), 26 Ill. 2d 567, 570-71, 187 N.E.2d 685; *People v. Ellis* (1st Dist. 1976), 41 Ill. App. 3d 377, 390, 354 N.E.2d 369.) When an identification is not positive, there must be some fact or circumstance to aid the trier of fact in determining the weight to be given the identification testimony. *People v. Washington* (1st Dist. 1970), 121 Ill. App. 2d 174, 179, 257 N.E.2d 190.

In the case at bar, Officers Nick and Franzo observed a hole in the first level of the Bluestein store and saw about 100 men's suits stacked next to the hole. They saw three or four men climbing a ladder to the second level of the roof. Franzo chased the offenders up the ladder, across the roof to the roof of the adjoining Woolworth building, down a stairway, through a plate glass door, and out onto one alley and through another alley. The offenders stayed approximately 30 feet ahead of Franzo throughout the chase. One offender, later identified as Brown, wore dark trousers, wash pants, a short black leather jacket and a blue shirt with a white stripe across the neck. Franzo was able to identify Brown and the other offenders because the alleys were well lit and the offenders periodically looked back over their shoulders. Officer Bart saw three men followed by a police officer emerge from the Woolworth building and run down an alley. He identified Brown as the man wearing the blue shirt with a white stripe. Officer Fritz, Bart's partner, also saw the three offenders leave the Woolworth building. He joined the chase and, although he lost sight of the offenders for a brief period of time, eventually tackled and subdued Brown. Brown was described as wearing a pullover shirt with a white stripe.

■■ Brown argues Franzo, the only occurrence witness to make an identification, did not have an adequate opportunity to observe because the offenders were always running, with their backs to Franzo, at a distance of approximately 30 feet ahead on a dark night. We disagree. The record does not disclose that Franzo ever lost sight of the offenders during the course of the chase. The alleys were well lit. Brown and the other offenders gave Franzo opportunity for identification by intermittently looking back over their shoulders. See *People v. Williams* (1st Dist. 1975), 25 Ill. App. 3d 604, 323 N.E.2d 499 (abstract).

■■ Furthermore, even if we accept Brown's contention that the circumstances were such that Franzo was unable to make a positive identification, we think there was sufficient evidence connecting Brown to the roof of the Bluestein building to sustain the conviction. In *People v. Oswald*, a defendant convicted of burglary contended he was not proved guilty beyond a reasonable doubt. An eyewitness observed, from across a 30-foot street, a man back out of a broken window at a food store and

disappear into an alley. The eyewitness located a squad car and gave the officers a description of the man's clothing and appearance. Minutes later, a man was arrested nearby whose clothing and appearance matched those of the man the eyewitness had seen. Part of the burglary proceeds were found in the man's possession. Although the man was four inches taller than the eyewitness' original estimate of the burglar, the eyewitness made a positive on-the-scene identification. The court held there was sufficient corroboration of the eyewitness identification, in particular that defendant wore clothing like that of the burglar and that he was in possession of part of the burglary proceeds, to sustain the conviction. *People v. Davis* (1st Dist. 1968), 95 Ill. App. 2d 448, 237 N.E.2d 854, involved a fact situation similar to that of the instant action. Police officers observed two men on the roof of a clothing store. A hole had been made in the roof. One man wore a hat and a three-quarter length coat, and the other wore a beany-type cap and a black leather jacket. The men climbed onto the roof of an abutting building and forced their way through a skylight into a vacant third floor apartment. They were arrested shortly after exiting from the abutting building. Defendant wore clothing similar to that worn by one of the men observed on the roof. Although the officers lost sight of the two men when they entered the abutting building, the court held the break in continuity did not appreciably affect the credibility of the identification evidence. The similarity of clothing was stressed in the court's affirmance of the judgment of conviction.

The circumstantial evidence in the case at bar establishes Brown was one of the offenders observed by Officers Nick and Franzo on the Bluestein roof. He was arrested wearing clothing similar to that worn by one of the offenders. He was taken into custody after a prolonged chase by Officer Fritz, who had observed the offenders exit from the adjacent Woolworth building followed by Officer Franzo. From their initial discovery of the offenders until Brown's capture, the police were in close pursuit. The few seconds in which the offenders were out of the sight of Officer Fritz did not appreciably affect the credibility of the identification evidence.

■■ The on-the-scene identification by Officer Franzo also did not adversely affect the credibility of the identification evidence. Rather, it probably strengthened its credibility. It was not a suggestive show-up as Brown maintains. Prompt on-the-scene identifications have been approved by Illinois courts on numerous occasions. (*People v. Elam* (1972), 50 Ill. 2d 214, 218, 278 N.E.2d 76; *People v. Young* (1970), 46 Ill. 2d 82, 87, 263 N.E.2d 72; *People v. Prignano* (1st Dist. 1971), 2 Ill. App. 3d 1063, 1066, 278 N.E.2d 128, *cert. denied*, 409 U.S. 851, 34 L. Ed. 2d 94, 93 S. Ct. 62.) Here, Brown was identified at the scene by Officer Franzo immediately after the chase and capture. If Franzo had then indicated

Brown was not one of the individuals who fled from the Woolworth building, the police could have resumed their search for two uncaptured suspects rather than one suspect while the trail was fresh. We find this was proper investigative conduct.

■■ Furthermore, we find that codefendant McGowan's acquittal of the same offense did not give rise to a reasonable doubt of Brown's guilt. The general rule in Illinois is that the failure to convict one codefendant does not raise a reasonable doubt as to the guilt of the other codefendants except when the evidence given against all of the defendants is identical in all respects. *People v. Stock* (1974), 56 Ill. 2d 461, 465, 309 N.E.2d 19; *People v. Taylor* (1st Dist. 1974), 25 Ill. App. 3d 396, 403, 323 N.E.2d 388.

The evidence given against Brown and his codefendant McGowan was not identical in all respects. Brown's capture was the culmination of a prolonged police chase. McGowan was arrested in the vicinity about an hour after hot pursuit of the offenders ended. This difference in the evidence provided the jury with a reasonable basis upon which to differentiate between the defendants. The lack of immediacy in McGowan's arrest could have been viewed by the jury as weakening the identification evidence. Hence, the jury could have been reasonably less certain of Brown's guilt than McGowan's guilt. At any rate, the jury was entitled to believe one portion of the identification testimony and disregard another portion. (*People v. Green* (1st Dist. 1976), 42 Ill. App. 3d 978, 993, 356 N.E.2d 947.) The differences in the evidence allowed the jury to arrive at different conclusions regarding the guilt of Brown and McGowan which were not irreconcilable.

■■ In light of the evidence and testimony given at trial, we find ample support for the jury's determination of guilt beyond a reasonable doubt. We will not disturb the jury's determination.

## II.

Brown contends certain errors at trial had the effect, cumulatively as well as severally, of denying him a fair trial. The state maintains the alleged errors do not require reversal of the conviction. It argues that no trial errors occurred, and, alternatively, if errors did occur, such errors were harmless owing to the overwhelming evidence of Brown's guilt.

## (A)

Brown first claims the trial court improperly limited cross-examination of several State witnesses. The court repeatedly refused to allow cross-examination relating to the witnesses' failure to mention in previous judicial or extra-judicial statements certain facts to which the witness testified in court.

■■ The omission of a witness to state a particular fact under

circumstances rendering it incumbent upon him to, or likely that he would state such fact, if true, may be shown to discredit his testimony as to such fact. The omission must be material and the proper foundation must have been laid. (*People v. Henry* (1970), 47 Ill. 2d 312, 321, 265 N.E.2d 876.) *Henry* also holds that the requirements for laying the foundation for impeachment need not be rigorously enforced so long as the witness is not unduly surprised and is given an adequate opportunity to explain the discrepancy. (47 Ill. 2d 312, 322.) If the court fails to allow the impeachment by omission, reversal is not required unless manifest prejudice to the defendant results. *People v. Burchette* (1972), 4 Ill. App. 3d 734, 737, 281 N.E.2d 773.

■■ Officer Nick testified in court that he saw three or four men on the Bluestein roof. In his police report, Nick stated that he saw three men. Defense counsel attempted to cross-examine Nick as to his failure to indicate in his report that he saw three or four men. This omission was not material because Nick admitted on cross-examination that he actually saw only three men. The trial court properly refused to permit impeachment on this collateral matter.

■■ The trial court also limited cross-examination of Officer Fritz. Some of these limitations pertained only to codefendant McGowan and did not affect Brown. The only significant limitation concerning Brown was the trial court's refusal to allow cross-examination as to the absence of mentioning Brown in Fritz's police report even though Fritz testified to having seen Brown come out of the Woolworth building. Although the State argues foundation for this line of questioning was improper in form, our examination of the record shows the foundation met the liberal requirements of *Henry*. This was a material impeachment by omission which should have been allowed by the trial court. However, in view of the fact that Brown was positively identified leaving the Woolworth building by two other officers as well as Fritz, the failure to allow this line of cross-examination was not manifestly prejudicial.

## (B)

■■ Next, Brown argues the State improperly implied that he had made an admission despite the fact that his motion *in limine* to suppress had been granted. Officer Fritz testified that he advised Brown of his *Miranda* rights. Defense counsel's objection to this line of questioning was sustained. Fritz then testified that he proceeded to 1521 Harding where he observed a 1966 Ford automobile—the vehicle connected to McGowan. Brown argues that, by implication, the prosecution was permitted to advise the jury that Brown had made an admission which enabled the officer to locate McGowan's car. This is not necessarily so. There is no connecting factor present in the testimony of Fritz whereby the jury

could conclude that Brown said anything at all, much less that he made an admission which led to McGowan's car. Furthermore, since the jury acquitted McGowan, it is unlikely that the jury connected Brown to McGowan at all. *People v. Pughsley* (1966), 73 Ill. App. 2d 442, 220 N.E.2d 89, is distinguishable from the instant case. There, the prosecutor established that questions had been posed to the defendant and that answers had been given. Although defense counsel objected successfully to this line of questioning, the prosecutor pursued it again on cross-examination of the defendant. Ultimately, defense counsel's objections were again sustained. Nonetheless, the substance of the questioning was revealed by the nature of the prosecutor's examination. Here, there is no evidence that any questions were posed. There is no evidence that Brown gave any answers or that the police investigation of the 1966 Ford was in any way connected to Brown. The court sustained objections based on the motion *in limine*. There is no error in this regard.

## (C)

Brown urges that he was prejudiced by prosecutorial misconduct on closing argument. The assistant State's Attorney made three comments in his closing argument which Brown characterizes as improper. First, in response to defense counsel's argument that no physical or scientific evidence was introduced, the prosecutor explained that the Chicago Crime Lab is one of the busiest crime labs in the world, and stated "I'll give you the reason for that in a minute. The State's Attorney had a lot to do with this case." Next, the prosecutor characterized Brown's theory of the case as "a smoke screen." Finally, the assistant State's Attorney stated "And if you decide that they [police officers] lied to you, better loath Mr. Lindmark [another assistant State's Attorney] and you better loath me, because we prosecuted it." Although in each instance the trial court sustained defense counsel's objections, Brown maintains the objections were not sufficient to cure the prejudicial effect of the argument in the minds of the jurors.

■■ As to the first comment, we do not agree with Brown that it implied the prosecutor based his belief of Brown's guilt upon evidence not introduced at trial. A more rational interpretation is that the prosecution's work load in preparing the case was heavy and for this reason, fingerprints and other scientific evidence were not prepared. This interpretation complements the preceding statement explaining the large volume of work done by the Chicago Crime Lab.

The second comment was also not prejudicial. It has been held error to charge defense counsel with employing improper tactics to win a verdict for his client. However, the cases cited by defendant involve charges far more serious than putting up a smoke screen. In *People v. Stock* (1974), 56

.

Ill. 2d 461, 309 N.E.2d 19, defense counsel was accused of fabricating a defense, and suborning perjury. In addition, the prosecutor directly referred to two defendants' failure to testify. The prosecutor did this despite repeated objections and admonishments from the court. Again, in *People v. Freedman* (1954), 4 Ill. 2d 414, 123 N.E.2d 317, the prosecutor accused defense counsel with fabricating a defense and with encouraging defendant to make up a story which would comport with that defense. Repeated objections to this line of argument were overruled by the court. Finally, in *People v. Savage* (1934), 358 Ill. 518, 193 N.E. 470, the prosecutor's argument was held improper not only because of attacks on defense counsel's tactics but also because the prosecutor alluded to a matter not in evidence; that defendant had been involved in another crime, which was unduly prejudicial in light of the evidence in the case.

■■ On the other hand, the most that could be said for the prosecutor's comment here is that he charged defense counsel with obscuring the issues by his argument. Similar prosecutorial argument has been held not to be reversible error. (*People v. Palmer* (1970), 47 Ill. 2d 289, 300, 265 N.E.2d 627, *cert. denied*, 402 U.S. 931, 28 L. Ed. 2d 866, 91 S. Ct. 1532; *People v. Weaver* (1st Dist. 1972), 7 Ill. App. 3d 1104, 1107, 288 N.E.2d 669.) Unlike *Stock*, the trial court did not lose control of the proceedings. We conclude the prosecutor's comment did not deny Brown a fair trial.

■■ The third comment is more troublesome. Brown cites *People v. Bitakis* (1st Dist. 1972), 8 Ill. App. 3d 103, 106, 289 N.E.2d 256, for the proposition that the State's Attorney should not lend the weight of his office to support the credibility of the State's witnesses. We agree with this general principle of law. However, we find *Bitakis* distinguishable from the instant case. In *Bitakis*, the prosecutor "pledged his personal reputation that a state witness was not a false one." The assistant State's Attorney here was more restrained. His comment fell far short of a blunt pledge to the jury. Furthermore, unlike *Bitakis*, the trial court sustained defense counsel's timely objection. Although the remark was perhaps improper, we do not think the remark, viewed in its proper perspective, was so prejudicial as to constitute reversible error. *People v. Kirk* (1966), 36 Ill. 2d 292, 297, 222 N.E.2d 498; *People v. Lion* (1957), 10 Ill. 2d 208, 216, 129 N.E.2d 757.

### (D)

■■ The final trial error asserted by Brown is the court's unintentional statement in instructing the jury that "Each defendant is presumed to be guilty of the charge against him. * * *" This erroneous instruction was immediately corrected upon defense counsel's motion and the jury was then properly instructed as to the presumption of innocence. In *People v.*

*Mentola* (1971), 47 Ill. 2d 579, 584, 268 N.E.2d 8, it was urged that the prosecutor's final argument gave rise to reversible error when he misstated the standard as to burden of proof. The supreme court held that there was not prejudicial error where the trial court, in response to defense objections, promptly and properly instructed the jury correctly and corrected the error. In the instant case, the jury's ultimate conclusion to acquit one of the codefendants while convicting the other demonstrates that the jury was able to properly apply the instructions as given by the court. There was no prejudicial error in this regard.

Brown was entitled to a fair trial, not a perfect trial. Although a few errors did occur during the course of the trial, we do not find them to be of any consequence. Their effect on the proceedings, cumulatively as well as severally, was harmless beyond a reasonable doubt.

### III.

Brown finally contends his sentencing was improper. The burglary of which Brown was convicted occurred on May 2, 1971. The penalty for burglary under the provisions then in effect was "any indeterminate term with a minimum of not less than one year." (Ill. Rev. Stat. 1971, ch. 38, par. 19—1(b).) Brown was convicted after January 1, 1973, the effective date of the Unified Code of Corrections. Under the Code, burglary is a Class 2 felony; its penalties range from 1 to 20 years, with the minimum term set by the court not to exceed one-third of the maximum (section 5—8—1). The record does not disclose which law the trial court used to impose sentence. Under either the prior law or the new Code, the sentence of three to nine years imprisonment was permissible.

Section 8—2—4 of the Code provides:

> "If the offense being prosecuted has not reached the sentencing stage or a final adjudication, then for purposes of sentencing the sentences under this Act apply if they are less than under the prior law upon which the prosecution was commenced." Ill. Rev. Stat. 1973, ch. 38, par. 1008—2—4.

See also section 4 of "An Act * * * in relation to the construction of the statutes" (Ill. Rev. Stat. 1973, ch. 131, par. 4), which provides in pertinent part:

> "If any penalty, forfeiture or punishment be mitigated by any provisions of a new law, such provision may, by the consent of the party affected, be applied to any judgment pronounced after the new law takes effect."

■■■ It is not always obvious whether the prior law or the new Code is more beneficial to a defendant. (*People v. Johnson* (4th Dist. 1976), 43 Ill. App. 3d 91, 93, 356 N.E.2d 1134; *People v. Davis* (1st Dist. 1976), 36 Ill. App. 3d 904, 907, 344 N.E.2d 736.) For example, a defendant may wish to

take advantage of the possibility of periodic imprisonment under the new Code (section 5—7—1), or he may not wish to serve a mandatory parole time after release from prison, as required under the new Code (section 5—8—1). In *People v. Davis* 36 Ill. App. 3d 904, 907, this court held a defendant was entitled to elect whether to be sentenced under the law in effect at the time the offense was committed or under the new Code. We are aware of case law from other districts which hold that a defendant does not have a right to choose which law applies. (See, *e.g., People v. Zboralski* (3d Dist. 1975), 33 Ill. App. 3d 912, 913, 338 N.E.2d 925.) However, we choose to adhere to the *Davis* holding because we think fundamental fairness requires that a defendant be given the opportunity to choose the sentencing alternative which he considers more favorable. See *People v. Hollins* (1972), 51 Ill. 2d 68, 71, 308 N.E.2d 710; *People v. James* (1970), 46 Ill. 2d 71, 73, 263 N.E.2d 5.

Because Brown was not permitted to elect whether to be sentenced under the prior law or the new Code, we hold his sentencing was improper. This cause must be remanded for resentencing. In view of our holding, we need not decide if the trial court improperly considered some of Brown's arrests for offenses of which he had been subsequently discharged.

The judgment of conviction is affirmed; the cause is remanded for resentencing.

Affirmed and remanded for resentencing.

DOWNING, P. J., and JIGANTI[1], J., concur.

---

[1] At the time of oral argument of this case Justice John C. Hayes sat with Justices Downing and Jiganti. Subsequently Justice Hayes died. Since that time Justice Stamos was designated the third member of the panel and has listened to the tape of the oral argument, has read the briefs and excerpts from the record.