THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN SUTTON, Defendant-Appellant.

First District (4th Division)   Nos. 61418, 77-476 cons.

Opinion filed November 17, 1977.—Rehearing denied December 8, 1977.

James Geis and Richard J. Geddes, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Michael E. Shabat, and Mary Ellen Cagney, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE ROMITI delivered the opinion of the court:

Defendant, John Sutton, was convicted of murder (Ill. Rev. Stat. 1971, ch. 38, par. 9—1), after a bench trial in the circuit court of Cook County, and was sentenced to a term of 14 years to 14 years and 1 day. The issues for review are, whether defendant was proved guilty beyond a reasonable doubt, whether he knowingly and intelligently waived a jury and whether he was prejudiced because of incompetency of counsel at trial.

We affirm.

Officer George Gaynor testified that at about 4:15 p.m. on December 24, 1972, he went to 6401 South Normal in Chicago, Illinois and found a body on the porch. Defendant, who was standing in the doorway, told him the deceased, Mr. Alfred Hill, had just left his apartment and had apparently suffered a heart attack. Officer Gaylor stated defendant did not appear to be excited. The deceased was taken to St. Bernard's Hospital where he was pronounced dead on arrival. Rose Hill, deceased's wife, then identified the body and asked that it be taken to the Metropolitan Funeral Home.

Officer Jasper testified that on December 25, 1972, he got a call to remove a body from the Metropolitan Funeral Home. Upon arriving there, he observed the body of Alfred Hill with a puncture wound in the left side of the chest. He stated the shirt and T-shirt belonging to the victim each had a hole in the same area of the chest as the wound, but the clothing was not bloody. He then transported the body to the Cook County Morgue.

It was stipulated, that if called, Dr. Culala, a forensic pathologist, would testify Alfred Hill's death was caused by a bullet wound to the chest and heart and that he had extracted a pellet from that area. It was further stipulated that the pellet taken from the deceased's chest was examined by a ballistics expert who, if called, would testify the pellet appeared to be a .22-caliber bullet.

John White testified that on December 24, 1972, he lived across the street from defendant and had known him for about five years. On that date he saw a police car at the side of defendant's building. He thought that Otis Harper, who lived in the apartment next to defendant, had been gambling and White and Bill Harper then drove to defendant's building and had a conversation with the police officers concerning the deceased. At this time defendant leaned out of the window and yelled, "What are you all doing with [John White]? He ain't done nothing."

When the police left, White, Bill Harper and defendant went to defendant's room and had a few drinks. White recalled there was nothing strange about defendant's appearance, and he seemed normal. Defendant gave White and Bill Harper $5 and told them to get some liquor. They returned to defendant's room and resumed drinking. White and Bill Harper then went to see Otis Harper in the next apartment down the hall. When they pushed the door to the room open, Otis Harper was not there. Defendant, who had followed them down the hall, admonished them to leave stating, "I'll bash your head in." Shortly thereafter, defendant said they were all friends and gave them $5 more to get another pint of liquor. White and Bill Harper left with the money and did not return.

Sidney Ridley testified that on December 24, 1972 he lived on the first floor of defendant's building. At about 4 p.m. he was by the front door of

the building with his son when he heard a gunshot from upstairs. He took his son out the door and then went back inside and climbed the stairs. When he reached the top, Alfred Hill was lying on the floor. Defendant was standing beside him, and Otis Harper was standing in the door of his (defendant's) apartment. Ridley asked who shot Al Hill, and defendant replied that he did. Ridley suggested that they call the police, but defendant said not to. However, Ridley's wife subsequently called the police. Ridley then heard a dragging noise on the stairs, and about three minutes later he looked out the front window and saw that Hill was lying on the front porch. He later saw defendant meet the police on the porch and heard him say deceased had a heart attack. Ridley testified he remained inside and did not talk to the police.

Otis Harper testified that about 3 p.m. on December 24, 1972, defendant and Hill, who were his long-time friends, picked him up at his aunt's house, and they went back to defendant's apartment where each had a shot of whiskey. Later, the three men went into the bedroom and shot dice for about 45 minutes or an hour. Then an argument started between defendant and Hill. Defendant stated he would shoot Hill, and Otis observed defendant had a .22-caliber gun in his hands. Otis told defendant he did not need the gun because they were all friends, but defendant stated he would also shoot Otis. The latter immediately went to his room next door; several minutes later he heard a shot which was followed by the sound of dragging feet. He opened his door and saw defendant dragging Hill to the stairs. Otis caught Hill's wrist and called him three times but got no response. Otis told defendant he ought to be ashamed of himself for killing his best friend. Defendant replied that he would kill Otis and advised him, "You don't know nothing." Otis was backing toward his room when Ridley came up the stairs. Thereafter, Otis saw defendant drag Hill's body down the stairs to the first floor. About one hour later he (Otis) went out the front door and encountered defendant standing by the front gate. Defendant then stated to him that Al Hill had died of a heart attack and the police had taken him away.

Officer Richard Bedran testified that he interviewed defendant about 10:30 a.m. on December 26, 1972. Defendant told him that Hill had come to his apartment at about 4 p.m. on December 24, 1972, and had brought a half-pint of whiskey. They sat and talked while Hill drank the whiskey and the defendant had a soft drink. At about 4:30 p.m., Hill stated that he had to pick up his wife and left the apartment, leaving his topcoat and hat. About 20 minutes later, he noticed the police pull up in front of his house. He went downstairs and identified Hill, who was lying on the porch.

Defendant testified that he was 61 years old, had retired in 1968, and supported himself with a disability pension. He testified that on

December 24, 1972, Hill came to his apartment, and asked where Otis was; he stated he had a present of a Christmas drink for both of them. Defendant told him Otis was at his aunt's house, and they picked him up in Hill's car. The three then returned to defendant's, where they each had a drink. Defendant stated Hill took off his coat and hat and laid them on a chair. Otis and Hill left sometime later, and he did not know what happened after that; he thought they went out to get more to drink. He denied they shot dice, stating he had no money.

Shortly thereafter, he was looking out the window and saw the police arrive. He thought Mrs. Ridley, who was ill, was being taken to the hospital. He went downstairs and saw Hill lying on the porch. He told the police he knew the man but told them nothing more. Subsequently, John White and Bill Harper came into his apartment. When they walked into Otis Harper's apartment, he told them to come out because Otis did not want anyone in there, and they left. He denied dragging Hill to the porch and stated he was not physically capable of doing it because he suffered from congestive heart failure. He also stated the police searched his apartment twice, but found no gun.

Dr. Scribner, a doctor employed by the sheriff's department, testified he first saw defendant on December 29, 1972. His diagnosis was chronic congestive heart failure and mild hypertension. He testified a patient who is not on medication would have symptoms of a rapid heart rate of 100 to 120, breathlessness and swelling in the legs. However, those symptoms would depend on a patient's diet and fluid intake. He further stated that exertion by one with such a condition would be accomplished with difficulty. Dr. Scribner testified defendant was not in acute distress and had a heart rate of 86. He stated that anyone suffering from chronic congestive heart failure, who would drag a body the specified distance, would be out of breath.

At the conclusion of the evidence the court stated that White, Ridley and Harper were very persuasive and that defendant's story was incredible. It found defendant guilty and entered judgment on that finding.

Defendant's appointed counsel, the office of the State Appellate Defender, contends the only issue for appeal is whether defendant was proved guilty beyond a reasonable doubt in the light of evidence defendant was not physically capable of dragging the deceased down to the porch, because of his poor health. Counsel relies on the testimony of Dr. Scribner, who stated that anyone in defendant's condition who dragged a body the specified distance would be out of breath, and on the testimony of several other witnesses who noticed nothing unusual about defendant at the time. However, Dr. Scribner indicated defendant did not have acute symptoms, and his testimony did not preclude the

possibility defendant could have dragged the deceased to the porch. The prosecution also established that defendant did not move the body the entire distance at one time. The testimony indicated defendant dragged the deceased out of his room to the top of the stairs and did not complete dragging him down the stairs to the porch until after the confrontation with Ridley and Harper. There was also evidence the police did not come immediately, and defendant had ample time to compose himself before their arrival.

■■ A review of the record shows that both Sidney Ridley and Otis Harper testified to facts which establish that defendant shot and killed the deceased, and the trial court found their testimony to be credible. The testimony of even a single witness is sufficient to support a conviction even if contradicted by the accused. (*People v. Fabian* (1976), 42 Ill. App. 3d 934, 973, 356 N.E.2d 982.) Furthermore, defendant's initial statement to police officers that Hill left his apartment to pick up his wife, leaving his hat and coat on the chair, is manifestly unreasonable in light of the winter season and differs from his testimony at trial. We also note that defendant originally told the police that he and Hill were alone, but at trial he changed his testimony to include Otis Harper. The record properly establishes defendant's guilt. See *People v. Akis* (1976), 63 Ill. 2d 296, 347 N.E.2d 733.

Material in the nature of a *pro se* brief prepared for defendant, who was alleged to be illiterate, further asserts defendant was not proved guilty beyond a reasonable doubt because the bullet wound was not found at the hospital where Hill was pronounced dead, and no blood was found on the clothing of the deceased. It is therefore suggested that the wound was inflicted after Hill died. The *pro se* materials also claim the remarks of the trial court at the hearing in aggravation and mitigation, that the court wished it had never seen defendant, suggest that it did not firmly believe defendant was guilty.

Although the absence of blood on the clothes of the deceased is curious in light of the nature of the wound, the stipulated testimony of the forensic pathologist showed that the deceased died of a bullet wound to the chest and heart. That conclusion precludes the speculative assertion as to the cause of death suggested by defendant. The fact that the hospital pronounced Hill dead on arrival and did not find the bullet wound late on the afternoon of December 24, might be explained by circumstances surrounding the impending Christmas holiday.

The remarks of the trial court at the sentencing hearing cannot be construed as reflecting uncertainty about defendant's guilt, but reflect, rather, concern about a 61-year-old man convicted of a serious crime. That the trial court found defendant guilty, even though it may have been

favorably disposed toward him, emphasizes the conclusive nature of the finding of guilt.

■■ In his *pro se* brief defendant next contends he did not knowingly and understandingly waive a jury trial and that his trial counsel was incompetent. A jury waiver must be understandingly accomplished in open court (Ill. Rev. Stat. 1973, ch. 38, par. 103—6), and it is the court's duty to establish that the waiver is properly made. (*City of McLean v. Kickapoo Creek, Inc.* (1972), 51 Ill. 2d 353, 282 N.E.2d 720.) Whether a jury waiver is knowingly and understandingly made depends on the particular facts and circumstances of each case. (*People v. Stolfo* (1977), 46 Ill. App. 3d 616, 361 N.E.2d 101; *People v. Ruiz* (1976), 42 Ill. App. 3d 969, 356 N.E.2d 881.) The transcript in this case showed that defendant gave inconsistent answers when first asked if he wanted a jury or bench trial. The court then explained the jury waiver form to defendant and asked his counsel to explain it to him. Thereafter, there was a discussion between defendant and his counsel and defendant signed the waiver. Under these circumstances, we find there was a proper jury waiver as required by section 103—6 of the Code of Criminal Procedure of 1963.

■■ Finally, in order to establish incompetence of counsel it is necessary to demonstrate "actual incompetence of counsel, as reflected by the manner of carrying out his duties as a trial attorney," which resulted in substantial prejudice without which the outcome would probably have been different. (*People v. Goerger* (1972), 52 Ill. 2d 403, 288 N.E.2d 416; *People v. Dudley* (1970), 46 Ill. 2d 305, 263 N.E.2d 1.) Here, a review of the record indicates that defendant's assertions in this regard are conjectural. *People v. Townsend* (1977), 47 Ill. App. 3d 789, 792, 365 N.E.2d 110.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

DIERINGER, P. J., and JOHNSON, J., concur.