THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM CLARK, Defendant-Appellant.

(No.. 61703;

First District (3rd Division)—December 4, 1975.

James J. Doherty, Public Defender, of Chicago (John Breslin and Richard D. Kharas, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (David Novelselsky, Laurence J. Bolon, and Michael J. Coggin, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DEMPSEY delivered the opinion of the Court:

The defendant, William Clark, was indicted for rape and aggravated kidnapping. A jury found him guilty of both charges and he was sentenced to the penitentiary for a term of four to twelve years. He contends that he was denied a fair trial by prejudicial comments made by the prosecutors during their closing arguments.

In the early afternoon of the fourth of July, 1973, as the nineteen-year-old complainant was walking towards the intersection of Lavergne Avenue and Quincy Street, Chicago, she was accosted by two young men who positioned themselves on each side of her. The one on the left asked her where she was going. She did not answer and continued walking in the same direction. At this point, the one on her right, who she subsequently described as have one crossed eye and being six feet tall, around 160 pounds in weight, and about 18 or 19 years of age, put a gun to her head and said: "Keep walking bitch or I'll blow your damn head off."

The youths turned her around and walked in the direction of Adams Street. They turned down that street and then dragged the complainant into a gangway between two buildings and into the basement of one of them. It later developed that the youth who held the gun to her head, the defendant Clark, lived in this building. Clark struck her with the gun on her back and head when she refused to remove her clothing. She fell to the floor and he kept the gun pointed at her while his companion raped her. He then gave the weapon to his companion and raped her himself.

As the assailants talked about what to do with her, the partially clothed complainant opened a window and attempted to climb out. The defendant seized her and tried to drag her back inside, but after a brief struggle she was able to escape. She met a woman in the courtyard who resided in the building. She was taken to the woman's apartment and her mother and the police were called. The police searched the basement and found her discarded clothing. The next day they showed her seven photographs and she identified one them as that of the defendant. He was arrested three days later and she picked him out from a five-man lineup.

At the trial Clark denied raping the complainant, and six witnesses supported his alibi. They testified that they all attended a family barbecue on July 4, and that the defendant and a woman he was living with and their child were picked up at their Adams Street home and were on their way to the barbecue at the time the rape occurred.

In the State's initial closing argument to the jury, an assistant State's Attorney, stated:

"Ladies and gentlemen, we, as lawyers, * * * when presenting

a case, many times think about the evidence and try to draw analogies or refer back to something that may have happened that is very similar to the case or the trial that we are presenting. This case is no exception for myself. I couldn't help but think of the biblical passage that deals with Cain and Abel. When Cain killed Abel, God put a mark on the face of Cain. He put that mark on the face of Cain so that he would be known to all men, where he went, for what he did and who he is. And I can't help but think of the mark on that man right there, the crossed eye."

Counsel for the defendant made an objection to this comment and it was sustained by the court. The assistant continued:

"Determine for yourself, ladies and gentlemen, whether the evidence has proved that he committed that rape. He's got the mark on him. Because that crossed eye shows you and tells you that he was the one that committed the rape, just as that little girl told you he did."

No objection was made to this comment.

In the State's final argument a second prosecutor stated:

"Ladies and gentlemen, we all live in Cook County. That is why you are on this jury. I am sure you know there are many parts of Cook County where it is not safe for a woman to walk alone at night."

An objection to this statement was sustained by the court. The prosecutor then said:

"[C]lark has gone one step further. He has made it unsafe for women to walk the streets in broad daylight."

Again the defense counsel objected, but the objection was overruled. The prosecutor then made these comments about the veracity of the defendant's alibi witnesses:

"So, that is what he brings before you, the alibi defense. He knows this, you know, maybe it's not enough. So, he's going to bring some more witnesses in for you. And he does. He brings in his family and his friends  *  *  *  and I'm sure, from what you people saw, they were a group of liars  *  *  *."

Counsel for the defendant made the objection that there was no testimony to the effect that the alibi witnesses were liars. The court overruled the objection and the prosecutor stated:

"Well, if there wasn't any evidence in this case that these witnesses were liars, they had better take the word lie out of the American language. Because,  *  *  *  the witnesses  *  *  *  told you a different story, which means [that] some of them had to be lying. And each witness was different in their story than the

other witness. If that is not a lie, * * * I don't know what it is.

* * *

When they are at Bobby Hopkins' house, he [the defendant] says he is in the alley. Carl Mayes says he is inside playing records. And Bobby Hopkins says he is out front talking with the neighbors. Is that a lie? And that is where that alibi goes."

The defendant's counsel did not object to these statements.

Every defendant, regardless of the nature of the proof against him, is entitled to a trial that is free from improper comments that engender prejudice. (*People v. Stock* (1974), 56 Ill.2d 461, 309 N.E.2d 19.) However, where it appears that the improper remarks do not constitute a material factor in the conviction, or that they are of such a minor nature that prejudice to the defendant is not their probable result, the verdict will not be disturbed. (*People v. Clark* (1972), 52 Ill.2d 374, 288 N.E.2d 363.) It is not improper for a prosecutor to reflect unfavorably on the accused, denounce his wickedness or dwell on the evil results of crime. *People v. Pierce* (1975), 26 Ill.App.3d 550, 325 N.E.2d 758.

■■ Comparing the defendant to Cain in the biblical account of Cain and Abel, although not prejudicial, was both inaccurate and improper. On the other hand, the comment that the defendant was guilty because he was marked with a crossed eye, was based on the evidence and was not improper. The statement that certain Cook County neighborhoods are dangerous after dark was unsupported by evidence but cannot be held to be a material factor in the defendant's conviction. The statement that the defendant's conduct made it unsafe for women to walk in the streets in broad daylight may have been intemperate, but it was not inflammatory since there was a partial evidentiary foundation for it. The prosecutor's further suggestion, which we did not quote, that the jury should not let him get away with it, was proper because the prosecutor had the right to urge the fearless administration of justice.

■■ It is not reversible error for a prosecutor to say that a defendant or a witness lied if his statement or opinion is founded on evidence.(See *People v. Weathers* (1974), 23 Ill.App.3d 907, 320 N.E.2d 442.) The prosecutor's remarks about the false testimony given by the alibi witnesses while harsh, were supported by the testimony of these witnesses and did not constitute prejudicial error.

Although some of the prosecutor's comments were better left unsaid, we do not think they could have contributed to the defendant's conviction. The judgment is affirmed.

Affirmed.

McGLOON, P. J., and MEJDA, J., concur.