THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BILLY LEON HICKS, Defendant-Appellant.

Fifth District    No. 5—84—0015

Opinion filed July 18, 1985.

Daniel D. Yuhas and Timothy M. Gabrielsen, both of State Appellate Defender's Office, of Springfield, for appellant.

John R. Clemons, State's Attorney, of Murphysboro (Frank A. Weiss, of Chicago, and Stephen E. Norris, of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE KARNS delivered the opinion of the court:

Defendant, Billy Leon Hicks, was convicted by a jury in the circuit court of Jackson County of the offense of armed robbery (Ill. Rev. Stat. 1983, ch. 38, par. 18—2(a)) and sentenced to a term of 30 years' imprisonment. On appeal, defendant contends (1) that the trial court abused its discretion by failing to exclude a juror and impanel an alternate, on the basis of a radio broadcast heard by the juror concerning the trial, thereby denying defendant a fair trial and (2) that a single suspect show-up, conducted at the scene of the crime, was unnecessarily suggestive. We affirm.

With respect to defendant's first contention of error, the facts reveal that on the morning of the second day of trial, the court announced that it had been brought to its attention that a radio station had broadcast an item concerning the pending case. The court asked any juror who had heard the report to raise his hand and two jurors, Mrs. Bame and Mrs. Koenig, did so. The court then excused the remaining jurors and questioned Mrs. Bame and Mrs. Koenig, and also allowed counsel to ask additional questions. During its inquiry, the court determined that Mrs. Koenig had heard defendant's name and

then turned the radio off. She was not influenced, and heard nothing to indicate the defendant was guilty. Mrs. Bame stated that she had heard the defendant's name and that he was from Indiana in a broadcast on WINI in Murphysboro. When asked what else she had heard, she stated she could not remember, and indicated she "was busy at the time and I knew I was not supposed to listen." She further indicated that her radio was always on. The court further examined Mrs. Bame to determine whether she told told anyone else on the jury of the broadcast, and she stated she did not. After further interrogation by the court, Mrs. Bame stated she did not have any different opinion about the case than she did when she left the previous evening at the completion of the first day of trial; that what she heard did not influence how she would decide the case, nor would it make her more favorable to the State or to the defendant. The bailiff then advised the court, outside the presence of Mrs. Bame, of the contents of the entire broadcast, which mentioned that the defendant's trial was in progress and that he had charges against him in Indiana. After denying defense counsel's motion for a mistrial, the court again questioned Mrs. Bame to ensure that she had not been influenced by the broadcast. Finally, the court again admonished her to refrain from discussing the broadcast with the other jurors and then admonished the entire jury as a whole.

Defendant contends that the trial court abused its discretion by failing to excuse Mrs. Bame and impanel an alternate, thereby denying defendant a fair trial. According to defendant, he was denied a fair and impartial jury inasmuch as Mrs. Bame heard a radio broadcast mentioning other charges in Indiana. Defendant also argues that information from the broadcast indicating that defendant was from Indiana must have prejudiced the juror in light of evidence presented at the trial which connected the defendant to the "getaway" vehicle which had Indiana license plates and which contained an Indiana drivers license bearing defendant's photograph.

The granting of a mistrial due to prejudicial publicity is a matter addressed to the sound discretion of the trial court and an abuse of that discretion constitutes reversible error. (*People v. Malmenato* (1958), 14 Ill. 2d 52, 63, 150 N.E.2d 806, 812, *cert. denied* (1958), 358 U.S. 899, 3 L. Ed. 2d 148, 79 S. Ct. 222.) Every situation in which extraneous or unauthorized information reaches the jury however does not result in prejudicial error. (*People v. Collins* (1979), 71 Ill. App. 3d 815, 823, 390 N.E.2d 463, 470.) The question that is presented is whether the jurors or any of them have been influenced and prejudiced to such an extent that they would not or could not be

fair and impartial, and each case must be determined on its own particular facts and circumstances. (*People v. Malmenato* (1958), 14 Ill. 2d 52, 63, 150 N.E.2d 806, 812, *cert. denied* (1958), 358 U.S. 899, 3 L. Ed. 2d 148, 79 S. Ct. 222.) The statement of a juror that he was not influenced by the allegedly prejudicial publicity is not conclusive. (*People v. Malmenato* (1958), 14 Ill. 2d 52, 63, 150 N.E.2d 806, 812, *cert. denied* (1958), 358 U.S. 899, 3 L. Ed. 2d 148, 79 S. Ct. 222.) The most controlling factor or circumstance to be considered by the trial court is the nature and character of the allegedly prejudicial publicity. *People v. Hryciuk* (1954), 5 Ill. 2d 176, 184, 125 N.E.2d 61, 66.

We do not believe that the trial court in the present case abused its discretion in denying defendant's motion for a mistrial. The trial court properly safeguarded defendant's right to a fair trial by thoroughly examining the juror, Mrs. Bame, as to possible prejudice. Defendant contends that juror Bame heard the entire radio broadcast, a portion of which mentioned other charges against defendant in Indiana. Mrs. Bame's responses to the trial judge's inquiry, however, revealed that the only portion of the radio broadcast she heard or recalled was that the defendant's trial had begun, and that he was from Indiana. Even assuming juror Bame were to have recalled the entire broadcast, including the portion relating to pending charges in Indiana, the thorough examination and admonishments by the trial court established that Mrs. Bame would remain fair and impartial. She repeatedly indicated to the court that she was not influenced by the broadcast. Additionally, we note that the allegedly prejudicial broadcast, even in its entirety, was far more innocuous than those in the cases cited and relied upon by defendant in his brief. In *People v. Hryciuk* (1954), 5 Ill. 2d 176, 125 N.E.2d 61, the jurors had read newspaper articles stating the defendant, in a rape trial, had confessed to two murders for which the State planned to try him and ask the death penalty; that he had boasted of attacks on more than 50 women and was described by the police as a "vicious degenerate." In *People v. Murawski* (1946), 394 Ill. 236, 68 N.E.2d 272, an abortion case, the objectionable newspaper article stated that defendant had twice been indicted for abortion and once for murder by abortion but had never been brought to trial. In both these cases, the information in the objectionable articles was attributed to the prosecutor's office, and there were additional facts which led the court to believe that a number of jurors had read the items and been influenced thereby. In the case at bar, there is no basis to conclude that the State's Attorney's office provided any information to the radio station or capitalized upon it. (*Cf. People v. Malmenato* (1958), 14 Ill. 2d 52, 64, 150

N.E.2d 806, 813, *cert. denied* (1958), 358 U.S. 899, 3 L. Ed. 2d 148, 79 S. Ct. 222.) The trial judge thoroughly admonished the juror not to mention the broadcast to the other jurors and all the jurors were then reminded that nothing appearing in a newspaper or in a radio broadcast could be considered as evidence in the case. Considering the nature of the allegedly prejudicial broadcast, the statements of juror Bame to the trial court, and the repeated admonishments by the court, we believe the trial court properly denied defendant's motion for a mistrial. To warrant a reversal, it must reasonably appear that the jurors, or any one of them, have been influenced or prejudiced to such an extent that they would not or could not be fair and impartial. (*People v. Malmenato* (1958), 14 Ill. 2d 52, 65, 150 N.E.2d 806, 813, *cert. denied* (1958), 358 U.S. 899, 3 L. Ed. 2d 148, 79 S. Ct. 222.) Such evidence is lacking in this case.

■ Defendant next contends that the one-man "show-up" at which he was identified by three witnesses shortly after the armed robbery was unnecessarily suggestive and violative of due process. In particular, defendant claims that the three witnesses did not give any type of description of a suspect prior to the "show-up" and that later these witnesses testified only to those characteristics of the defendant that were readily apparent from the confrontation and accordingly, this out-of-court identification testimony should have been excluded at trial because its suggestiveness seriously outweighed its reliability.

The facts at trial reveal that at about 3:45 p.m. on July 25, 1983, Carbondale police officers responded to a radio call of an armed robbery in progress at the Rex Loan Company. The offenders were two black males, one of whom was wearing dark clothing. Upon arriving at the scene, Officer Van Milligan observed two black males exit the loan company. One had a fist full of money and other items. When the officer yelled, "Halt, police," the two ran. Two other officers, Voss and Reno, drove up and Officer Van Milligan indicated the suspects had fled south. The two officers then spotted the defendant wearing dark clothing. They pursued him and restrained him at the Federal Building, about one block from the scene of the crime within minutes after he ran from the scene. The defendant was holding a gun and had a large wad of money in his pocket. He was immediately placed in the squad car, given his *Miranda* warnings and driven back to the Rex Loan Company. Haddon Davenport, Mike Cole and Janice Nix, the three victims who had been inside the loan company during the crime, all positively identified the defendant by his clothing and his voice, after he voluntarily spoke. They did not identify defendant based on his facial features because defendant had put on a mask dur-

ing the armed robbery. Additionally, Nancy Davis, who had seen defendant's face from a distance of about 12 feet as he ran from the loan company also identified the defendant in the squad car at the crime scene. This identification by Ms. Davis was made between five and eight minutes after the crime.

Although one-man show-ups are generally condemned, they have been consistently upheld when they are justified by the circumstances. One of the circumstances in which a show-up has been justified by the court is when it is necessary to facilitate a police search for the real offender, and the Supreme Court has consistently upheld prompt identification of a suspect by a witness or victim near the scene of the crime where they foster the desirable objectives of a fresh, accurate, identification, which may lead to the immediate release of an innocent suspect and at the same time enable the police to resume the search for the fleeing offender while the trail is still fresh. (*People v. Elam* (1972), 50 Ill. 2d 214, 218, 278 N.E.2d 76, 78; *People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313; *People v. McKinley* (1977), 69 Ill. 2d 145, 370 N.E.2d 1040.) We believe that the identification of the defendant at the crime scene by the three victims can be justified on the bases of the three witnesses' opportunity to view the defendant and the facilitation of the police search. We note additionally that the show-up was conducted within minutes of the crime, immediately after the defendant was subdued only a block away from the scene of the armed robbery while in possession of a gun and large amount of cash.

■■ ■ Even assuming, *arguendo*, that the show-up was unnecessarily suggestive, we find that the testimony concerning the show-up, as well as the witnesses' in-court identification of the defendant, were nevertheless admissible, as there was no showing of a substantial likelihood of irreparable misidentification. Pursuant to the principles set forth in *Manson v. Brathwaite* (1977), 432 U.S. 98, 53 L. Ed. 2d 140, 97 S. Ct. 2243, and *People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313, an unnecessarily suggestive out-of-court identification as well as an in-court identification based on the out-of-court identification may nevertheless be admissible so long as the totality of the circumstances indicates that the out-of-court identification possesses sufficient indicia of reliability. The factors to be considered in making this assessment of reliability, or put another way, to evaluate the likelihood of misidentification, include the opportunity of the witness to view the defendant at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the defendant, the level of certainty demonstrated by the witness at the confron-

tation and the length of time between the crime and the confrontation. *Manson v. Brathwaite* (1977), 432 U.S. 98, 114, 53 L. Ed. 2d 140, 154, 97 S. Ct. 2243, 2253.

Applying the aforementioned "reliability" factors to the facts in the case at bar indicates that the identification of the defendant, even though arguably suggestive, was reliable under the totality of the surrounding circumstances. The three witnesses inside the loan company all had ample opportunity to view the defendant during the crime. Although the defendant wore a mask, Mike Cole and Janice Nix were able to briefly see his face. More importantly, however, all three witnesses positively identified the defendant on the basis of his clothing (a distinctive black shirt with a white collar) and his voice. The record demonstrates that during the armed robbery, the defendant continuously spoke by directing the witnesses, demanding more money and repeatedly threatening them. Moreover, Nancy Davis, an eye-witness bystander who also identified the defendant in the squad car, had seen the defendant run from the loan company without his stocking cap on, only 5 to 8 minutes earlier. He was carrying a gun and some money, and she testified that she got "a good look at his face" from a distance of about only 12 feet. With regard to the witness' degree of attention paid to the defendant, we note that the three victims all gave detailed and consistent versions of the events of the armed robbery. With regards to the accuracy of their prior descriptions, we agree with the defendant that the three victims did not provide a prior description, but it must be noted that the police officers responded so quickly to the call of an armed robbery in progress that they were able to apprehend the defendant prior to even speaking with the victims. The officers' apprehension of the defendant was based instead on the description radioed by two building inspectors, who saw the defendant and his accomplice enter the loan company with stocking caps and on the basis of Officer Van Milligan's message indicating the suspects had fled south. Additionally, the witnesses were certain of their identification at the confrontation. When asked if anyone could identify defendant, Haddon Davenport immediately upon hearing defendant speak, stated, "that's him. I recognize the voice. That's him." Mike Cole testified that he recognized defendant by his clothing and that "his voice sounded very similar to the person who was telling us to do all of these things inside of the loan company." Janice Nix testified, "I recognized his voice right off." She further testified that defendant, while inside the loan company, had a black shirt with a white collar and dark slacks. In the squad car, he was dressed "the very same way." Likewise, Nancy Davis, who had seen the defend-

ant's face when he ran from the loan company, did not waver or hesitate in identifying him in the squad car. Finally, we note that less than eight minutes elapsed between the crime and the confrontation.

The fact that the three witnesses inside the loan company were not basing their identification on defendant's facial features but rather upon his clothing and voice is not crucial, as an accused can properly be identified by his voice. (*People v. Finney* (1967), 88 Ill. App. 2d 204, 232 N.E.2d 247; *People v. Nelson* (1970), 127 Ill. App. 2d 238, 262 N.E.2d 225.) Although defendant attempts to rely upon certain alleged inconsistencies in the description of the defendant and his clothing, we find that these inconsistencies in the trial testimony are not, in our judgment, sufficiently damaging to the reliability of the identification to necessitate its exclusion under *Brathwaite*. In our opinion, consideration of the foregoing requisite factors conclusively establishes that the witness' in-court identification had an origin independent of the show-up, and that they were based upon their memory of the events at the time of the crime and therefore all identification testimony was properly admitted at trial.

Finally, we note parenthetically that even without the testimony of the four eye-witnesses who viewed defendant in the squad car, the case against the defendant is overwhelming. Two building inspectors, Norman Horner and Brett Dougherty, saw two black males with stocking caps enter Rex Loan Company, one of whom had a gun. They saw them exit and run away from Officer Van Milligan and into an alley. They also observed a van with Indiana license plates honking when a squad car pulled up. Officer Van Milligan actually saw defendant exit the loan company with his hands full of money and then run south towards the parking lot. Officer Van Milligan radioed this information to Officers Voss and Reno, who apprehended defendant only one block from the Rex Loan Company. At the time of his arrest, defendant was in possession of a loaded .38-caliber revolver identified by the victim as similar to that used by the robber, and a large amount of U.S. currency. He was immediately identified by Officer Van Milligan. Finally, a driver's license bearing defendant's photograph and social security card in defendant's name were recovered from the Chevrolet "getaway" van.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

JONES, P.J., and KASSERMAN, J., concur.