THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
NATHAN BEALS *et al.*, Defendants-Appellants.

First District (1st Division)   No. 86—0325

Opinion filed January 19, 1988.

Paul P. Biebel, Public Defender, of Chicago (Georgeen M. Carson, Assistant Public Defender, of counsel), for appellants.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Joan E. Disis, and Leon N. Stiles, Jr., Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

Following a bench trial, defendants Nathan Beals and Kenneth Mitts were convicted of armed robbery and sentenced to seven years in the Illinois Department of Corrections. On appeal, they raise the following issues: (1) whether the prosecution failed to prove defendant Mitts guilty beyond a reasonable doubt; (2) whether the trial court erred in refusing to allow the defense to impeach the prosecution's chief witness with respect to omissions in his prior statements to police; and (3) whether the trial court erred in admitting evidence of a lineup identification of Nathan Beals. We affirm.

At trial, the following evidence was adduced: Troy Moore, the co-defendant who testified for the People in exchange for receiving a sentence of two years' probation for robbery, testified that defendants Mitts and Beals and he were at Beals' home prior to committing the robbery. At approximately 2 a.m. on the robbery date, the defendants left Beals' home to go "joyriding," after taking the keys to Beals' mother's automobile, a white Chevrolet Nova. Beals announced his plans for a robbery during the joyride, and Moore and Mitts agreed to participate. Moore was to be the lookout man for the police, while Mitts was to be the driver of the vehicle. Beals revealed he had a gun, a small .22 caliber pistol, to be used in the robbery. Beals also had a mask "like a Halloween mask" to be used. After completing the robbery, the defendants planned to meet approximately three blocks from the robbery site on 63rd Street and Oakley Avenue.

Moore testified that Nathan Beals was the original driver and that defendant Mitts exchanged seats with Beals behind an Earl Scheib

body shop to prepare for the robbery. Mitts then drove the vehicle to the corner of Western Avenue where the Shell gas station was located and let Moore and Beals out of the vehicle. Moore took up his position as lookout at a telephone booth to watch for the police. Mitts drove the vehicle into the gas station, and Beals proceeded through an alley to the side of the gas station attendant's booth.

After defendant Mitts had pulled into the gas station, he started to pump gas. He turned the gas pump on, then switched it off and on again. The attendant left his locked booth in order to reset the pump. Defendant Beals, wearing the mask, came from the side of the gas station and held the gun on the attendant. After Beals took the money from the attendant, he ran down the alley. Defendant Mitts waited for his change before driving away. Moore stated that after the robbery, he and Beals met again and Mitts picked them up at 63rd and Oakley. They then returned to Beals' house, where they divided the money.

Carlos Carlin, the gas station attendant, testified that at 3:10 a.m., he saw a white Nova pull up to a gas pump. Carlin was in the station booth with the doors locked when he saw defendant Mitts appear to have trouble with the gas pump. He left the booth to reset the pump and noticed Troy Moore at the telephone booth. After resetting the pump, he attempted to return to the station booth. He then noticed a man coming from the alley wearing a mask. The man told Carlin to "get his hands up." Carlin saw that he had a revolver and knew that it was loaded because he saw the bullets in the revolver. The man put the gun against Carlin's chest and went through Carlin's pockets, removing $20 bills, $5 bills and some $1 bills. After taking the money, he ran toward the alley.

Carlin stated that he recognized Nathan Beals as the robber despite the fact that he was wearing a mask. He recognized his voice because, earlier in the day, Beals had come into the station to buy a package of cigarettes. When the defendant had approached the counter, he was told the price and said that he thought they were cheaper. He did not buy any cigarettes but remained in the store looking around before he left.

After defendant Beals took the money, Carlin saw him run into the alley. While Carlin was trying to call the police, defendant Mitts, who was still at the station, told Carlin to hurry up and give him his change. Although Mitts had been standing next to Carlin during the robbery, he had said nothing and had not been robbed. Carlin gave Mitts his change and noted the license number of the Nova as Mitts drove off.

While defendant Beals was searching the gas station attendant for money, Luis Masson drove by the station and saw the robbery in progress. Masson testified that he saw a man wearing a mask and a gray jogging suit pointing a gun at the attendant. Masson later identified Beals based upon the jacket and shoes he had worn during the robbery and from the facial features of the defendant. After the robbery, Masson had followed the defendant and saw him remove his mask while running.

Masson also observed and identified the lookout man as Troy Moore and Kenneth Mitts as the driver of the white Nova. While following Beals after the robbery, Masson saw Beals meet Troy Moore at 65th and Western Avenue.

Arresting officers Bilecki and Bartasik testified that they checked out the license plate number given to them by the victim and found that the car was registered to a Molly Stewart, Nathan Beals' mother, who lived on Wolcott Street. The officers went to her home at about 4 a.m. and saw the white Nova with its engine still warm and Nathan Beals on the porch talking to another individual. Defendant Beals and defendant Mitts, who were observed leaving the back door of the Beals house, were subsequently arrested. Shortly thereafter, the gas station attendant, who was being taken to the police station, was brought to Wolcott Street, where he identified defendant Beals as the robber.

When defendant Beals was searched after his arrest, officers recovered two $5 bills and seven $1 bills from his pocket. One of these dollars bills was identified by the victim, who recognized the bill by its age and the way it was "crumpled." When defendant Mitts was searched, the officers found a $20 bill and a $5 bill inside his shorts.

At approximately 5:30 a.m., detectives conducted a lineup which included defendant Mitts, defendant Beals, Troy Moore and two other men. The victim and the eyewitness, Luis Masson, viewed the lineup. Both men identified defendant Mitts, defendant Beals and Troy Moore as being in the station that night.

When the officers spoke with Molly Stewart, defendant Beals' mother, Stewart stated that when she awoke that morning to speak with police officers, she noticed that her car, a white Nova, was not in the same place that she had parked it in earlier. Detective Griffin testified that he asked her at that time if she noticed anything missing from her car and stated that she told him that the last time she had driven it, there was a Halloween mask in the car that (Nathan) Beals used to "scare the children." At trial, Stewart denied that anything was missing from the car and claimed that she had never had a con-

versation concerning the Halloween mask with either Detective Griffin or Officer Bilecki.

The defendant called one witness, Molly Stewart. She claimed that on the night of the robbery, she was watching television with defendant Beals and fell asleep. She awoke to hear a pounding on the door and when defendant Beals went to answer it, the police put handcuffs on him. After the police searched the house and left, Stewart alleged that she heard noises in her basement and saw someone run out of her basement. As he ran past her, she noticed he was wearing a black jacket, a cap and jeans. She stated that she later went to the police station and saw the victim sitting in the corridor right across from the interview room in which Nathan Beals was located. She denied having any conversation about a missing Halloween mask.

Defendant Mitts and Beals were found guilty of armed robbery. They appeal.

■ Defendant Kenneth Mitts first contends that the prosecution failed to prove him guilty beyond a reasonable doubt, as the only evidence showing that he was accountable for the armed robbery came from the testimony of accomplice Troy Moore, who was granted probation in exchange for his testimony. Mitts maintains that without Moore's testimony, the evidence shows only that Mitts was a customer at the station when it was robbed; that he bought and paid for $3 worth of gas; that he said nothing to the robber and the robber said nothing to him. Mitts argued that mere presence at the scene of a crime does not prove accountability for the crime (*People v. Marquis* (1974), 24 Ill. App. 3d 653, 664, 321 N.E.2d 480, *appeal denied* (1975), 58 Ill. 2d 595); nor does presence coupled with the knowledge that a crime is being committed prove accountability for a crime (*People v. Banks* (1975), 28 Ill. App. 3d 784, 786, 329 N.E.2d 504). The State claims that defendant Mitts was found guilty beyond a reasonable doubt, as the testimony showed that he both planned and helped carry out the robbery and received a share of the proceeds. In our view, the testimony offered by Troy Moore, along with that of the victim, Carlos Carlin, and the independent witness, Luis Masson, proved defendant Mitts guilty beyond a reasonable doubt.

■■ ■ It is well established in Illinois that in a bench trial for a criminal offense, the credibility of witnesses is for the trial court to determine, and the decision of the trier of fact in that regard will not be disturbed unless it is based upon evidence so improbable as to raise a reasonable doubt of defendant's guilt. (*People v. Schubert* (1985), 136 Ill. App. 3d 348, 353, 483 N.E.2d 600.) Absent a contrary show-

ing, it is presumed that the court in a bench trial considered only competent evidence in arriving at the verdict. (*People v. Shore* (1984), 129 Ill. App. 3d 443, 451-52, 472 N.E.2d 512, *appeal denied* (1985), 102 Ill. 2d 558.) Even though the court may view uncorroborated testimony of an accomplice with suspicion and scrutinize it carefully on review, the fact that a witness is an accomplice or expects leniency does not destroy his credibility, but rather, affects the weight to be given his testimony and is, therefore, a matter for the trier of fact. (*People v. Winfield* (1983), 113 Ill. App. 3d 818, 828, 447 N.E.2d 1029, *appeal denied* (1983), 96 Ill. 2d 549.) Material corroboration of an accomplice's testimony, as well as direct contradiction, is entitled to considerable weight in evaluating an accomplice's testimony. *People v. Wilson* (1977), 66 Ill. 2d 346, 349, 362 N.E.2d 291; *People v. Eddington* (1984), 129 Ill. App. 3d 745, 473 N.E.2d 103, *appeal denied* (1985), 102 Ill. 2d 556.

Here, even assuming that Moore's testimony warranted careful scrutiny, we note that defense counsel adequately cross-examined Moore in order to expose any bias or inconsistencies in his testimony. Moreover, his testimony was corroborated not only by the victim but by an uninvolved observer who was driving by the gasoline station, saw the robbery occurring, and then followed the participants afterward. Material corroboration was offered by evidence that when defendant Mitts was searched subsequent to his arrest, the police found a $20 bill and a $5 bill inside his undershorts. In light of the substantial corroboration of Moore's testimony, we find that the decision of the trial court as to Moore's credibility was not based on evidence so improbable as to raise a reasonable doubt as to his guilt. See *People v. Schubert* (1985), 136 Ill. App. 3d 348, 353, 483 N.E.2d 600.

Defendants Beals and Mitts both contend that their rights under the fifth and fourteenth amendments were denied when the trial court refused to allow defense counsel to impeach Troy Moore with respect to alleged omissions in his prior statements to police. Although this issue could be considered waived for failure to object at trial or to raise the issue in a post-trial motion (*People v. Lewis* (1981), 88 Ill. 2d 129, 149, 430 N.E.2d 1346, *cert. denied* (1982), 456 U.S. 1011, 73 L. Ed. 2d 1308, 102 S. Ct. 2307), we have reviewed the record and conclude that the argument lacks merit.

At trial, defense counsel questioned prosecution witness Troy Moore as follows regarding additions to his testimony subsequent to his initial statement to police:

"DEFENSE COUNSEL: Now, you made a statement to the police at the time you were arrested, didn't you?

WITNESS: Um-hum.

DEFENSE COUNSEL: Did you tell them everything that you knew at that time?

WITNESS: Yes, I did.

DEFENSE COUNSEL: But, there are an awful lot of things that—strike that. There are a lot of things you testified here today that aren't in that statement, are there?

WITNESS: Meaning what?"

At that point the prosecutor objected, complaining that asking Moore whether he had ever previously been asked about certain matters did not constitute an adequate foundation. The trial court sustained the objection. Defense counsel then went on to establish a proper foundation and questioned Moore in detail regarding what had been included in or omitted from his original statement to the police. Moore admitted that although he had initially told the police he received no money, he did receive proceeds from the robbery. He also admitted giving a statement in exchange for a recognizance bond and a promise of probation. When defense counsel directed Moore's attention to a specific omission or statement, Moore was given a full opportunity to explain. The record is clear that defense counsel was given sufficient latitude in confronting the witness against defendants here, thus there is no basis to their claim that they were denied their right under the fifth and fourteenth amendments to the United States Constitution and article 1, section 8, of the Illinois Constitution to confront witnesses against them.

Defendant has cited *People v. Henry* (1970), 47 Ill. 2d 312, 322, 265 N.E.2d 876, in which the court found reversible error where the trial court had refused to allow a witness to be impeached by her prior omission. In *Henry*, a prosecution witness who had given the most incriminating evidence against the defendants had given a statement to the police during their investigation in which she recounted the defendant's damaging admissions. Under cross-examination, she was asked whether she had ever had a conversation with the defendant's sister regarding information she had given to police. The witness denied the conversation. Later, when defense counsel called the sister and another woman in his case, the court refused to allow the admission of the claimed conversations on the basis that a proper foundation had not been laid.

Unlike *Henry*, defense counsel here was allowed to examine the prosecution's witness with respect to omissions in his initial statement for impeachment purposes. *Henry* is also distinguishable in that defense counsel in that case had made an offer of proof regarding the

excluded testimony. While we agree with defendants that the credibility of Troy Moore was highly important here, we conclude that defendants had adequate opportunity to impeach his credibility.

Defendant Beals alone contends that the trial court erred in admitting evidence of a lineup identification by the victim as the testimony established that the robber was wearing a mask during the robbery and the police forced him to wear certain clothing at the lineup.

Initially we note that defendant failed to file a motion to suppress the identification either before or during trial. Nor did he raise the issue in his motion for a new trial. Even assuming the issue was not waived, we believe defendant has failed to meet his burden of proving that the lineup was so prejudicial that it gave rise to a substantial likelihood of irreparable mistaken identification. See *Stovall v. Denno* (1967), 388 U.S. 293, 302, 18 L. Ed. 2d 1199, 1206, 87 S. Ct. 1967, 1972.

We will not assume suggestive conditions in the lineup merely because the robber was wearing a mask during the robbery. Carlos Carlin's testimony clearly indicates that he was able to identify Nathan Beals as the man who robbed him despite the mask. Carlin testified that earlier on the day of the robbery defendant had come into the gasoline station as a customer. Beals had stated that he wanted to buy some cigarettes and asked about the price. Although he ultimately did not buy the cigarettes, he remained in the station and looked around before leaving. Carlin was able to observe his face as well as his voice and clothing. During the robbery, Carlin recognized defendant Beals as the man he had seen earlier by his voice and his clothing.

During the lineup, Carlin identified three of the five men as the men who had been at the station during the robbery. He also stated that he had recognized Beals' voice from his two earlier encounters with him. Beals was also identified separately by Luis Masson. Absent any evidence that the witnesses were somehow coached to identify the defendants, as Beals suggests, we conclude that there was nothing procedurally incorrect about the lineup.

Defendant Beals has also claimed that he was impermissibly forced to wear certain clothing during a showup and the lineup at which he was identified by Carlin and therefore the identification testimony was improperly admitted. Defendant cites *People v. Franklin* (1974), 22 Ill. App. 3d 775, 317 N.E.2d 611, in which the court held that forcing the accused to wear a camel hair coat and a pair of pink pants similar to those worn by the robber were unconstitutionally suggestive. In the instant case, however, there is no testimony other than

that of defendant's mother, Molly Stewart, that defendant was compelled to change his clothes for the lineup. When Carlos Carlin identified Beals in the lineup, he noted that Beals was wearing the same gray jacket and high-topped gym shoes he had been wearing during the robbery. Carlin did note that defendant was wearing different pants, but nothing in the record supports defendant's assertion that he was forced to wear a white jogging suit in the lineup. The photograph of the lineup admitted into evidence also fails to support defendant's claim that he was forced to wear clothing that would tend to implicate him as the robber.

■ Moreover, as defendant concedes, the rationale of *Franklin* has been rejected by the United States Supreme Court. (See *Manson v. Brathwaite* (1977), 432 U.S. 98, 53 L. Ed. 2d 140, 97 S. Ct. 2243.) In *Manson* the Supreme Court rejected a *per se* rule of exclusion of identification evidence following suggestive confrontation procedures. The *Manson* court stated:

> "We therefore conclude that reliability is the linchpin in determining the admissibility of identification testimony ***. The factors to be considered are set out in [*Neil v.*] *Biggers* [(1972), 409 U.S. 188, 199-200, 34 L. Ed. 2d 401, 411, 93 S. Ct. 375, 382]. These include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself." 432 U.S. at 114, 53 L. Ed. 2d at 154, 97 S. Ct. at 2253.

Accord *People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.

In the instant case, we find that the identification did not constitute a violation of defendant Beals' constitutional rights as it occurred under reliable circumstances. The victim had given a description of the defendant and Beals was apprehended a short time later with the white Nova in his driveway. The victim was then taken to see the defendant and identified him by his features and clothing. As the court stated in *People v. Scott* (1980), 92 Ill. App. 3d 106, 110, 415 N.E.2d 1082, this procedure tends to insure accuracy, not bring about misidentification, because it fosters the desirable objective of timely, accurate identification, which may lead to the immediate release of an innocent suspect while enabling the police to pursue an escaping offender while the trail is still fresh.

In our opinion, the trial court properly admitted evidence of the lineup identification of the defendant, as the victim had noted the voice, face and clothing of the defendant and could make a proper identification. The identification was further corroborated by a codefendant and an independent witness, thus avoiding any likelihood of irreparable misidentification. *People v. Hicks* (1985), 134 Ill. App. 3d 1031, 1036, 481 N.E.2d 920, *appeal denied* (1986), 111 Ill. 2d 591.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Additionally, pursuant to *People v. Nicholls* (1978), 71 Ill. 2d 166, 374 N.E.2d 194, and *People v. Agnew* (1985), 105 Ill. 2d 275, 473 N.E.2d 1319, we assess defendant $75 in costs for the State's defense of the instant appeal and hereby incorporate it as part of this judgment.

Judgment affirmed.

BUCKLEY and QUINLAN, JJ., concur.